[Cite as *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252.]

THE STATE EX REL. SULLIVAN, APPELLEE, *v.* RAMSEY, JUDGE, APPELLANT.

[Cite as *State ex rel. Sullivan v. Ramsey*, **124 Ohio St.3d 355, 2010-Ohio-252.**]

*Prohibition — Trial court — Writ to prohibit trial judge from taking action while*
*appeal is pending — Issuance of amended qualified domestic relations*
*order while appeal from original order is pending — Trial court patently*
*and unambiguously lacked jurisdiction to amend order once appeal was*
*perfected — Writ granted.*

(No. 2009-1118 — Submitted January 26, 2010 — Decided February 3, 2010.)

APPEAL from the Court of Appeals for Lucas County, No. L-09-1118,

2009-Ohio-2279.

_____

**Per Curiam.**

{¶ 1}   This is an appeal from a judgment granting a writ of prohibition (1) to prevent a domestic relations judge from taking any action inconsistent with the court of appeals' ability to affirm, modify, or reverse the judge's January 9, 2009 judgment entry and qualified domestic relations order ("QDRO") in an underlying case and (2) to vacate the judge's amended QDRO that was issued while the appeal was pending.  Because the judge's action was inconsistent with the court of appeals' authority to review the January 9 judgment and QDRO, we affirm the judgment of the court of appeals.

**Facts**

*Divorce Decree*

{¶ 2}   In November 1986, appellee, Daniel J. Sullivan, married Janet M. Sullivan.  The parties had one child born during their marriage.

{¶ 3}   In July 1997, the Lucas County Court of Common Pleas, Domestic Relations Division, entered a final judgment granting the Sullivans a divorce and

incorporating their agreement concerning all of the matters in the case, including the division of their property.

{¶ 4} More specifically, the court ordered that Daniel "shall assign and transfer to the Plaintiff, Janet M. Sullivan, through a Qualified Domestic Relations Order, or separate Judgment Entry, whichever is applicable, twenty-five percent (25%) of the accrued monthly benefit that the Defendant, Daniel J. Sullivan, was entitled to receive *as of May 14, 1997*, from Defendant, Daniel J. Sullivan's interest in his retirement plan with the Civil Service Retirement System, pursuant to the provision of the Spouse Equity Act of 1984." (Emphasis sic.) The court further ordered that Janet's "rights to designate a beneficiary, for survivor benefits, or other related rights under the above described plan, shall be subject to the terms and conditions of the plan."

*January 2009 Judgment Entry and QDRO*

{¶ 5} After the parties divorced, no QDRO or separate judgment was timely entered to implement the court's division of Daniel's retirement plan. Daniel, without notice, removed his retirement plan from the Civil Service Retirement System and transferred it to the District of Columbia Police Officers' and Firefighters' Retirement Plan. He retired in 2003 and began receiving all of the pension benefits without allocating anything to Janet pursuant to the divorce decree.

{¶ 6} In July 2006, Janet filed motions for the approval of a QDRO, retroactive benefits, and attorney fees. On January 9, 2009, appellant, Judge Donald L. Ramsey, sitting by assignment in the domestic relations court, granted the motions and held that Janet was entitled to a monthly sum of $1,325.07 from Daniel's retirement plan, that Janet be awarded $76,185.92 as well as statutory interest for retroactive benefits due her but paid to Daniel, and that she be awarded $24,684 in legal fees and litigation expenses, together with statutory interest. Judge Ramsey held that Daniel's deliberate actions had denied Janet

"those benefits of the pension rights awarded to her pursuant to the parties' divorce decree."

{¶ 7} On that same date, Judge Ramsey issued a QDRO reflecting the parties' rights to Daniel's pension benefits. The QDRO provided that "[t]he benefit to be paid from the Plan directly to the alternate payee pursuant to the participant's assignment of benefits, in compliance with the D.C. Spouse Equity Act of 1988, as amended, shall be * * * ($1,325.07) of the participant's gross monthly benefit."

{¶ 8} The QDRO also provided for later amendment to constitute a proper QDRO according to the plan administrator's instructions:

{¶ 9} "The intent of this Order is to provide the alternate payee with a retirement payment that fairly represents the alternate payee's marital share of the retirement benefits set forth herein. In the event any Order submitted to the Plan Administrator is held not to be a Qualified Domestic Relations Order within the meaning of the D.C. Spouse Equity Act of 1988, as amended, the parties shall submit to and request this Court or any other Court of competent jurisdiction to amend or modify the Order, but only for the purpose of establishing or maintaining its qualifications as a Qualified Domestic Relations Order in such a manner that will reflect the parties' and the Court's intent as expressed herein, said amendment or modification Order is to be entered Nunc Pro Tunc if appropriate and Jurisdiction is hereby reserved for this purpose."

*Appeal and Amended QDRO*

{¶ 10} On January 20, 2009, Daniel appealed from the January 9 judgment entry and QDRO to the Court of Appeals for Lucas County.

{¶ 11} On April 7, while the appeal from the January 9 judgment and QDRO was pending, Judge Ramsey issued an amended QDRO, which – similar to the original QDRO – provided that "[t]he Alternate Payee shall receive * * * ($1,325.07) of the Participant's gross monthly benefit, as much [sic, such] amount

is adjusted by any cost-of-living adjustments. The Participant shall retain all remaining interest in the Plan." Judge Ramsey did not issue the amended QDRO as a nunc pro tunc order, as he was authorized to do under the terms of the original QDRO. The amended QDRO also differed in certain respects from the original QDRO. For example, the original QDRO specified that it was "issued pursuant to Ohio Revised Code Sections 3105.171 and 3105.18 which relate to the provision of marital property rights and spousal support payments," and the amended QDRO generally stated only that the order was issued "pursuant to the domestic relations laws of the State of Ohio." In addition, the amended QDRO specified that the order was intended to be a QDRO "as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974 ['ERISA']," whereas ERISA was unmentioned in the original QDRO.

*Prohibition Case*

{¶ 12} Three weeks after Judge Ramsey issued the amended QDRO, on April 28, Daniel filed a complaint in the court of appeals for a writ of prohibition to vacate the amended QDRO and to prevent the judge from taking any further action that interferes with or is inconsistent with the appellate court's ability to affirm, modify, or reverse the January 9, 2009 judgment entry and QDRO.

{¶ 13} On May 7, without waiting for a response from the judge, the court of appeals entered a judgment granting the writ of prohibition ordering Judge Ramsey to refrain from taking any action inconsistent with that court's ability to affirm, modify, or reverse the January 9, 2009 judgment entry that is the subject of the appeal and vacating the amended QDRO.

{¶ 14} This cause is now before the court upon the judge's appeal as of right.[1]

**Legal Analysis**

---

1. We deny Daniel's motion to strike.

*Prohibition*

**{¶ 15}** To be entitled to the requested writ of prohibition, Daniel was required to establish that (1) Judge Ramsey was about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Sliwinski v. Burnham Unruh*, 118 Ohio St.3d 76, 2008-Ohio-1734, 886 N.E.2d 201, ¶ 7. Judge Ramsey exercised judicial authority by issuing the amended QDRO.

**{¶ 16}** For the remaining requirements, "[i]f a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition * * * will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 12.

*Pending Appeal from Initial QDRO*

**{¶ 17}** The court of appeals based its issuance of the writ on the fact that Daniel's appeal from the January 9 judgment entry and QDRO was pending when Judge Ramsey issued the amended QDRO. "[W]e have consistently held that once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *State ex rel. Rock v. School Emp. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, 772 N.E.2d 1197, ¶ 8; *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 12.

**{¶ 18}** As Judge Ramsey observes, a QDRO is different from the usual court order. A QDRO is an order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." Employee Retirement Income Security Act of 1974, Section 1056(d)(3)(B)(i)(I), Title 29, U.S.Code, and Section 414(p)(1)(A)(i), Title 26, U.S.Code. "The QDRO

must be drafted to include very specific information with explicit instructions to the plan administrator. It is then the responsibility of the plan administrator to review the order of the trial court and determine whether it constitutes a QDRO pursuant to Section 414(p), Title 26, U.S.Code." (Footnote omitted.) *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 180, 559 N.E.2d 1292.

{¶ 19} "The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution." *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7. "[A] divorce decree is a final, appealable order, regardless of whether it calls for a QDRO that has not yet issued; the QDRO merely implements the divorce decree." Id. at ¶ 15. Consequently, "[a] QDRO is merely an order in aid of execution on the property division *ordered* in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it." (Emphasis sic.) *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469, ¶ 26. Therefore, when a divorce decree is appealed and there is no stay of the judgment pending appeal, the trial court is not divested of jurisdiction to issue a QDRO consistent with the decree because the order merely executes orders previously specified in the divorce decree.

{¶ 20} Nevertheless, for the following reasons, Daniel's appeal from the domestic relations court's actions on January 9, 2009, granting Janet's postdecree motions and issuing the original QDRO, patently and unambiguously divested Judge Ramsey of jurisdiction to issue the amended QDRO.

{¶ 21} First, Daniel did not appeal from the divorce decree. Instead, he appealed from Judge Ramsey's judgment on Janet's postdecree motions and the associated QDRO. Once the original QDRO was appealed, Judge Ramsey lacked jurisdiction to modify it. See *Albertson v. Ryder* (1993), 85 Ohio App.3d 765,

769-770, 621 N.E.2d 480 (trial court lacked jurisdiction to modify QDRO when appeal from order was pending).

{¶ 22} Second, there is no evidence or argument that the condition specified in the original QDRO for amendment or modification of the order – the parties' request for it – had been met.

{¶ 23} Third, by issuing an amended order rather than a nunc pro tunc order, Judge Ramsey effectively acknowledged that the original QDRO was being amended or modified rather than merely corrected to rectify a clerical error. See *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 14, quoting *State ex rel. Fogle v. Steiner* (1995), 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 ("nunc pro tunc entries 'are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided'").

{¶ 24} Based on the foregoing, Judge Ramsey patently and unambiguously lacked jurisdiction to issue the amended QDRO while the original QDRO was being appealed. "In cases of a patent and unambiguous lack of jurisdiction, the requirement of a lack of an adequate remedy of law need not be proven because the availability of alternate remedies like appeal would be immaterial." *State ex rel. State v. Lewis*, 99 Ohio St.3d 97, 2003-Ohio-2476, 789 N.E.2d 195, ¶ 18.

## Conclusion

{¶ 25} Because Judge Ramsey's issuance of an amended QDRO was inconsistent with the court of appeals' jurisdiction to review the January 9 judgment and QDRO, we affirm the judgment of the court of appeals granting the writ of prohibition to prevent the judge from taking any further action inconsistent with that court's authority to review the judgment being appealed and to vacate the amended QDRO.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

————————————

Thomas A. Matuszak, L.L.C., and Thomas A. Matuszak; and Law Offices of Stephen D. Long and Stephen D. Long, for appellee.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borrell, Assistant Prosecuting Attorney, for appellant.

————————————