[Cite as *Patten v. Patten*, 2011-Ohio-4254.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| Jerry Patten, | : | Case No. 10CA15 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Della Patten, | : | **RELEASED 08/22/11** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

Mark J. Donatelli, Xenia, Ohio, for Della Patten.[1]
_____
Per Curiam

{¶1}    Della Patten appeals after the trial court vacated the original qualified domestic relations order ("QDRO") that distributed the pension plan benefits of her former husband, Jerry Patten.  Some fifteen years after their divorce, Mr. Patten petitioned the court to "correct" the QDRO after he realized it designated Della Patten the surviving spouse beneficiary of his pension.  As a result, Ms. Patten, rather than his current wife, would receive his entire pension benefit if he should predecease Ms. Patten. The court found that the QDRO did not conform to the divorce decree and ordered the parties to file a nunc pro tunc QDRO limiting Ms. Patten's surviving spouse interest in the pension plan.

{¶2}    On appeal, Ms. Patten argues that the court lacked jurisdiction to "modify" the QDRO.  We disagree because a nunc pro tunc entry is the proper method to reflect what the court actually decided.  And because the original QDRO varied from the divorce decree and added substantive provisions not present in the decree, the court lacked jurisdiction to approve it.  Therefore, the court retained the inherent authority to vacate the

---

[1] Jerry Patten did not file a brief or otherwise participate in this appeal.

original QDRO and order the adoption of a nunc pro tunc QDRO that conformed to the divorce decree.

{¶3} Next, Ms. Patten contends that the court improperly utilized Civ.R. 60(A) and (B), which provide relief from judgment on various grounds, as a basis for granting Mr. Patten's request to vacate the QDRO. Although Mr. Patten cited those rules in his motion for a "corrective order," the trial court did not apply either rule in arriving at its decision. Rather, the court properly considered Mr. Patten's motion under its inherent authority to vacate a void order. Consequently, we overrule Ms. Patten's assignments of error and affirm the judgment of the trial court.

## I. Summary of the Case

{¶4} In 1992, Mr. Patten filed a complaint for divorce to end their marriage of 16 years. The referee recommended granting a divorce and making an equitable distribution of their marital property, which included Mr. Patten's pension plan with Ford Motor Co. The referee found "that [Mr. Patten] has a retirement benefit, which by agreement of the parties[,] [Ms. Patten] is entitled to $7,200.00 of that benefit at the present time or 24% of his retirement." The referee recommended "the Court order that [Ms. Patten] be entitled to receive from the husbands [sic] pension, 24% of whatever his pension is at the time he retires."

{¶5} In mid 1994, the trial court overruled objections filed by both parties, adopted the referee's recommendations in full, and issued the decree of divorce. Neither party appealed. Then in November 1994, the parties jointly filed a QDRO ensuring that Ms. Patten would receive her portion of Mr. Patten's retirement benefits from Ford plan administrators when he retired. Ms. Patten's attorney prepared the QDRO, Mr. Patten's attorney approved it, and the court signed and filed it.

**{¶6}**    The terms of that QDRO provide: (1) Ms. Patten receives 24 percent of the "life income benefit" of Mr. Patten's retirement plan at the time he begins to receive pension payments; (2) these benefit payments to Ms. Patten cease if Mr. Patten predeceases her; and (3) if Mr. Patten predeceases her before or after he begins receiving pension benefits, Ms. Patten is "treated as a surviving spouse under the Plan[.]"

**{¶7}**    Mr. Patten retired in 2007 and began receiving monthly pension payments for 76 percent of the plan's benefit.  Ms. Patten also began to receive her 24 percent portion of the payments.  Mr. Patten, who remarried after the divorce, became ill in 2009 and asked Ford plan administrators what would happen to the pension payments upon his death.  Ford informed him that Ms. Patten was designated the surviving spouse and would receive the remainder of his pension benefit.

**{¶8}**    Concerned that his current wife would receive no pension benefits upon his death, in 2010 Mr. Patten filed a "Motion for Corrective Order Pursuant to Civil Rules 60(A) and 60(B)."  There, he argued that the final divorce decree did not specify that Ms. Patten should be designated surviving spouse, yet the QDRO did so.  Mr. Patten argued that this was a clerical error under Civ.R. 60(A), or alternatively, a situation not previously discoverable that would justify relief from judgment under the provisions of Civ.R. 60(B)(5).

**{¶9}**    At a hearing before a magistrate, Mr. Patten testified that he believed that Ms. Patten should only be entitled to 24 percent of the retirement benefits he would receive at death.  Ms. Patten conceded that she was only entitled to 24 percent of his retirement benefits.  But Ms. Patten explained that in 2007, when she and Mr. Patten began receiving pension plan payments, Ford required her to make an election for a payment formula.  She chose a payment plan that was more favorable to her in her status as sole surviving spouse, which provided her with "guaranteed" income.  Ms. Patten

explained that if the QDRO no longer designated her as surviving spouse, the payment plan she elected no longer provided "guaranteed" income. She said she would have selected a different payment plan had she known the QDRO would later change. Ms. Patten did not believe that she could switch her election now.

{¶10} Ultimately, the magistrate agreed with Mr. Patten and concluded that the QDRO did not adhere to the terms of the final divorce decree. The magistrate found that Ms. Patten was entitled to 24 percent of Mr. Patten's pension until his death but should not be designated surviving spouse for any portion of the plan's benefits.

{¶11} After the parties filed objections, the trial court modified the magistrate's decision. Specifically, the court noted that contrary to the magistrate's verbal statements at the hearing, the decision improperly concluded that Ms. Patten was entitled to 24 percent of Mr. Patten's retirement benefits until his death. The court observed that the magistrate stated at the hearing that Ms. Patten remained "surviving spouse" under the plan, but only for 24 percent of whatever amount available for a surviving spouse. The court clarified that "[Ms. Patten] is to receive 24% of [Mr. Patten's] pension plan as of the time he retires and she shall have surviving spouse benefits for the 24% only and [Mr. Patten] can give his current wife or designee the remaining 76% of the pension plan . . . So, [Ms. Patten] shall receive 24% of [Mr. Patten's] monthly retirement benefit for her lifetime or until she should predecease [Mr. Patten] pursuant to surviving spouse benefits of the plan."

{¶12} Thereafter, Ms. Patten filed this appeal.

## II. Assignments of Error

{¶13} Ms. Patten assigns two errors:

Assignment of Error One:

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S OHIO CIVIL RULE 60

(A) MOTION FOR CORRECTIVE ORDER AS THE ORDER ISSUED BY THE

TRIAL COURT AMOUNTED TO A SUBSTANTIVE CHANGE IN THE PRIOR

JUDGMENT AND NOT THE CORRECTION OF A CLERICAL ERROR.

Assignment of Error Two:

THE JUDGMENT OF THE TRIAL COURT IMPROPERLY MODIFIED THE

PROPERTY SETTLEMENT OF THE PARTIES CONTAINED IN THE FINAL

JUDGMENT AND DECRE[E] OF DIVORCE WITHOUT HAVING RESERVED

JURISDICTION TO DO SO.

### III. The Void QDRO

**{¶14}** For ease of analysis, we address Ms. Patten's second assignment of error initially. There, Ms. Patten contends that the trial court modified the 1994 QDRO "without having reserved jurisdiction to do so." Ms. Patten also argues that the trial court lacked "continuing jurisdiction" to modify the property division agreement.

**{¶15}** R.C. 3105.171(I) prohibits future modification of an equitable property distribution. The equitable property distribution in this case was set forth in the final decree, adopted by the trial court in June 1994. The November 1994 QDRO implemented the property distribution of Mr. Patten's Ford pension.

**{¶16}** A QDRO is an "an order that 'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.'" *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214 (per curiam), at ¶18, citing Employee Retirement Income Security Act of 1974, Section 1056(d)(3)(B)(i)(I), Title 29, U.S.Code, and Section 414(p)(1)(A)(i), Title 26, U.S.Code. As we explained in

*Blaine v. Blaine*, Jackson App. No. 10CA15, 2011-Ohio-1654, at ¶20: "'[A] QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution.' *Wilson v. Wilson,* 116 Ohio St.3d 268, 2007–Ohio–6056, 878 N.E.2d 16, at ¶ 7. 'A QDRO does not in any way constitute a further adjudication on the merits of the pension division, as its sole purpose is to implement the terms of the divorce decree.' Id. at ¶ 16. ' ' * * * Indeed a QDRO may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree, since that order which provided for the QDRO has since become final.' ' Id. at ¶ 18, quoting *Lamb v. Lamb* (Dec. 4, 1998), Paulding App. No. 11–98–09.'" In other words, a QDRO is "merely an order in aid of execution on the property division *ordered* in the divorce or dissolution decree * * *." *Sullivan* at ¶19, citing *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469, at ¶26 (emphasis sic).

**{¶17}** When a QDRO is inconsistent with the final divorce decree it is void and the trial court lacks jurisdiction to issue it. See *Sullivan* at ¶19 and *Blaine* at ¶17, citing *Bagley* at ¶27. And a trial court retains authority to vacate its void judgments. *Blaine* at id., citing *Brownlee v. Brownlee*, Cuyahoga App. No. 94494, 2010-Ohio-5602, at ¶8. The determination of whether a judgment is void presents a question of law. Id. at ¶19. Likewise, the question of whether a QDRO conflicts with a divorce decree presents a question of law that we review de novo. Id.

**{¶18}** The language of the divorce decree provides: "Referee also recommends that the Court order that the wife be entitled to receive from the husbands [sic] pension, 24% of whatever his pension is at the time he retires."

**{¶19}** The November 1994 QDRO provides:

a. The amount payable to the Alternate Payee [Ms. Patten] shall equal 24% of the life income benefit computed as of the date that the Participant [Mr. Patten] begins receiving benefits under the plan.

b. Such payment shall commence when payments to the Participant commence upon retirement pursuant to the Plan if both the Alternate Payee and Participant survive to such date and shall cease upon the death of the Participant.

* * *

c. The Alternate Payee shall be treated as a surviving spouse under the Plan and, accordingly, in the event of death of the Participant either before or after commencement of retirement benefits, payment shall be made to the Alternate Payee as provided in the Plan for a surviving spouse.

{¶20} Thus, the divorce decree simply indicates that Ms. Patten is entitled to 24 percent of Mr. Patten's pension at the time he retires. The QDRO, however, sets forth that: (1) Ms. Patten is entitled to 24 percent of Mr. Patten's pension benefits during his life; (2) this benefit ceases when and if Mr. Patten predeceases her; (3) if Mr. Patten predeceases her either before or after he begins to receive pension benefits, she is entitled to the full amount she would be entitled to as his surviving spouse.

{¶21} The first of these provisions clearly effectuates the terms of the divorce decree, i.e., Ms. Patten is entitled to 24 percent of Mr. Patten's retirement benefit at the time he begins receiving pension payments. The provision granting Ms. Patten sole surviving spouse rights is not supported by any language in the divorce decree. Moreover, this provision effectively enlarged Ms. Patten's potential interest in Mr. Patten's pension benefit by making her the sole beneficiary of remaining pension benefits if he happens to predecease her. Instead of receiving 24 percent of the pension benefits remaining after

his death, she receives 100 percent.  Consequently, the November 1994 QDRO substantively varies from and modifies the final divorce decree.  Thus the original QDRO was void because the court lacked jurisdiction to modify the terms of the divorce decree.

{¶22}  Because the original QDRO was void, the trial court retained authority to vacate it and order the creation of a new QDRO that did conform to the terms of the divorce decree.  See *Sullivan*, supra, at ¶19.  The final judgment in this case, ordering the parties to create a QDRO that specifies Ms. Patten is designated as surviving spouse for only 24 percent of Mr. Patten's pension, conforms to the language of the divorce decree.  It ensures that Ms. Patten will receive 24 percent of Mr. Patten's pension benefits as long as those funds are available, in conformance with the language of the divorce decree.

{¶23}  Ms. Patten's argument concerning the election she made based upon her then status as sole surviving spouse -- unfortunate as it may be -- is simply not legally relevant to the issue of whether the court properly vacated the original QDRO and ordered the issuance of a new QDRO.  Accordingly, we overrule Ms. Patten's second assignment of error.

## IV. Civ.R. 60

{¶24}  In her first assignment of error, Ms. Patten argues the trial court erred in modifying the QDRO by utilizing the relief from judgment provisions contained in Civ.R. 60(A) and (B).  Ms. Patten argues that Civ.R. 60(A) allows for the correction of clerical errors only and the modification amounted to a substantive change in the terms of the QDRO.  Ms. Patten also argues that the court improperly granted the modification under Civ.R.60(B) as no provision within this rule justifies relief.  Ms. Patten does not include this argument concerning Civ.R. 60(B) in her statement of the assignment of error as required by App.R. 16(A)(3).  Nonetheless, we will address both.

**{¶25}** Mr. Patten cited Civ.R. 60(A) and (B) as the basis for his "Motion for Corrective Order." There is, however, no evidence in the record that the magistrate or trial court actually considered the requirements of these civil rules in ultimately vacating the original QDRO and ordering the issuance of a new one. Instead, the trial court properly treated Mr. Patten's motion as a common law request to vacate a void judgment and issued a nunc pro tunc entry reflecting what the court actually decided. See *Sullivan* at ¶23 and *Blaine* at ¶18. Here, the trial court mentions Civ.R. 60(A) and (B) only in its findings of fact, and only in describing Mr. Patten's motion. The substantive portions of the decision do not address either rule, and instead, properly analyze whether the original QDRO conformed to or varied from the final divorce decree. Consequently, the trial court did not use an improper procedure to vacate the QDRO and this assignment of error is meritless.

## V. Conclusion

**{¶26}** The trial court properly ordered the issuance of a new QDRO to conform to the provisions of the final divorce decree because the original QDRO varied substantively from the decree of divorce making it void. The trial court did not utilize an improper procedure in arriving at its decision. Consequently, we overrule Ms. Patten's first and second assignments of error.

JUDGMENT AFFIRMED

Harsha P.J., Concurring:

I join in Judge Fain's lament in *Bagley* at ¶35 et seq. over the trend to "jurisdictionalize" error.  But for the language in *Sullivan,* supra, at ¶19 quoting *Bagley*, at ¶26, I would hold the belated correction of the original QDRO was too little, too late and sustain the second assignment of error.  But in light of the Supreme Court of Ohio's characterization of QDROs that are inconsistent with the divorce decree as being void, rather than voidable, I reluctantly concur.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas, Division of Domestic Relations, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.
Harsha, P.J.:  Concurs in Judgment and Opinion with attached Concurring Opinion.


For the Court


BY: _____
      William H. Harsha, Presiding Judge


BY: _____
      Peter B. Abele, Judge


BY: _____
      Roger L. Kline, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**