[Cite as *Bursley v. Bursley*, 2019-Ohio-1556.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Gary A. Bursley

    Appellant

v.

Lea Ann Bursley

    Appellee

Court of Appeals No. H-18-006

Trial Court No. DR 2012 0803

**DECISION AND JUDGMENT**

Decided: April 26, 2019

* * * * *

Kristin E. Brown, for appellant.

Michael B. Jackson, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Huron County Court of Common Pleas, Domestic Relations Division, which granted the parties a dissolution of marriage and determined the marital property classification and the division of marital property. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} After 12 years of marriage, on September 11, 2012, appellant Gary A. Bursley and appellee Lea A. Bursley filed with the trial court a joint petition for

dissolution of marriage along with a separation agreement. On October 11, 2012, by consent judgment entry the magistrate recommended approval of the separation agreement and ordered each party "to fulfil each and every obligation imposed by the Separation Agreement." The trial judge adopted the magistrate's recommendation and dissolved the marriage. Neither party objected to the magistrate's recommendation, nor appealed the trial court's order.

{¶ 3} Then on September 24, 2015, Mrs. Bursley filed a "Motion to Reopen Divorce and Enforce Decree" arguing that Mr. Bursley was withholding her marital portion of his retirement benefits due to a dispute with a third-party consultant that "pursuant to the records in place with the plan provider there is no premarital interest and the entire account is subject to division." Mrs. Bursley acknowledged "at some point and time there may have been a premarital component to the account" but the premarital component "is not discernable today." The hearing on Mrs. Bursley's motion was held before a magistrate on October 29, 2015, but the hearing transcript is not in the record. Discovery and negotiations on the matter of the marital and premarital portions of the "retirement-related interests" ensued.

{¶ 4} Following a voluntary dismissal without prejudice due to a tentative agreement between the parties, Mrs. Bursley renewed her motion on May 23, 2017, along with a proposed qualified domestic relations order (QDRO) prepared by QDRO Consultants because the tentative agreement broke down. The QDRO divided equally the total balance of the disputed account identified as "PIM USA 401(k) TTEE for Gary

2.

Bursley" and created during the marriage. A hearing on Mrs. Bursley's motion was held before a magistrate on September 26, 2017, and the hearing transcript is in the record. The magistrate entered in the record his decision determining that Mr. Bursley failed to show by a preponderance of competent, credible evidence that any portion of the disputed account was "separate/premarital interest of Plaintiff," granted Mrs. Bursley's motion, and approved the QDRO. The trial court concurrently entered in the record its judgment adopting the magistrate's decision.

{¶ 5} Thereafter Mr. Bursley timely filed objections to the magistrate's December 4, 2017 decision, which Mrs. Bursley opposed, and on March 23, 2018, the trial court entered a decision and judgment entry overruling the objections.

{¶ 6} Mr. Bursley appealed to this court and set forth three assignments of error:

I. The trial court erred in adopting the decision of the magistrate classifying the entirety of appellant's retirement accounts to be marital property and failing to recognize any non-marital and/or separate property of appellant.

II. When enforcing its judgment entry, the trial court lacked subject matter jurisdiction to materially change the division of personal property as set forth in the separation agreement when it affirmed the magistrate's decision to adopt the QDRO which failed to acknowledge the non-marital, separate component of appellant's retirement accounts.

3.

III. The trial court erred in adopting the decision of the magistrate as to the QDRO which assigns to appellee an amount equal to fifty percent of appellant's total account balance.

### A. Marital Property Classification

{¶ 7} In support of his first assignment of error, Mr. Bursley argued the trial court erred for three reasons when it determined all of the disputed account was marital property. First, the separation agreement referenced the parties' antenuptial agreement in which the value of his retirement benefits prior to the marriage was $277,346. Second, his separate property did not transmute into marital property because: (a) the existence of Mr. Bursley's premarital retirement funds was undisputed, (b) the premarital retirement funds never lost their separate identity, (c) Mrs. Bursley never proved Mr. Bursley made any intervivos gifts of his premarital retirement benefits, and (d) as a matter of law it is "an impossibility" the parties could have a joint retirement account funded by a transfer from Mr. Bursley's premarital "qualified" retirement funds. Third, his witness was a qualified expert, and "[t]he magistrate had no reason whatsoever to discredit that [professional opinion] testimony under these facts [without objection by Mrs. Bursley]." Mr. Bursley argued "the trial court could not reasonably under any scenario or interpretation conclude that the significant pre-marital, non-marital monies in appellant's account could vanish by stroke of the judicial pen * * *."

{¶ 8} Mrs. Bursley argued the trial court did not err because both parties agreed "the Court was only being requested to enforce the decree[,] not change the interest of the

4.

parties in it." Mrs. Bursley further argued Mr. Bursley's premarital retirement funds changed during the marriage due to his job loss, and even Mr. Bursley's expert could not produce records to trace a premarital portion to the disputed account created during the marriage. Mrs. Bursley argued only Mr. Bursley held the documentation evidencing his retirement funds before and during the marriage. Mrs. Bursley argued even if it once existed, Mr. Bursley's premarital retirement account took an untraceable journey that, ultimately, became marital funds. Other than Mr. Bursley stating the value of his premarital amount, there was no other evidence to support his claim. As a result, Mrs. Bursley argued the disputed account was fully divisible.

{¶ 9} The trial court is required in a dissolution proceeding to determine what constitutes marital property and separate property. R.C. 3105.171(B). "Marital property" is not "separate property." R.C. 3105.171(A)(3)(b). Rather,

> As defined in R.C. 3105.171(A)(3)(a), "marital property" includes
> "[a]ll real and personal property that currently is owned by either or both of
> the spouses" and "[a]ll interest that either or both of the spouses currently
> has in any real or personal property, *including, but not limited to, the*
> *retirement benefits of the spouses*, and that was acquired by either or both
> of the spouses during the marriage." (Emphasis original.)

*Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, 11 N.E.3d 1119, ¶ 8, citing R.C. 3105.171(A)(3)(a)(i) and (ii). Both vested and unvested retirement benefits acquired during the marriage are marital property. *Id.* at ¶ 9, 17.

{¶ 10} In contrast, "separate property" is defined as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following," including, "Any * * * personal property or interest in * * * personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). Moreover, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "[T]he party claiming that an asset is separate property has the burden of proving the claim by a preponderance of the evidence." *Hook v. Hook*, 189 Ohio App.3d 440, 2010-Ohio-4165, 938 N.E.2d 1094, ¶ 19 (6th Dist.).

{¶ 11} We review a trial court's factual findings on the classification of marital and separate property pursuant to R.C. 3105.171 under a manifest weight of the evidence standard. *Okos v. Okos*, 137 Ohio App.3d 563, 569, 739 N.E.2d 368 (6th Dist.2000). We will not reweigh the evidence introduced to the trial court; rather, we will uphold the findings of the trial court if the record contains some competent, credible evidence to support the trial court's conclusions. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 468, 628 N.E.2d 1343 (1994).

1. Objections to Magistrate's Decision

{¶ 12} On December 13, 2017, Mr. Bursley filed his initial objections to the magistrate's decision pointing out the following errors: (1) finding his expert's testimony was unreliable, (2) referring to his premarital account as an individual retirement account,

6.

(3) finding Mr. Bursley did not meet his burden to prove separate property, (4) finding the evidence admitted at the hearing showed no premarital component for separate property, and (5) concluding that a joint 401K is possible under the law. Mr. Bursley further argued he should not be penalized for his prior attorney's errors, and information previously unavailable at the hearing was now available and answered why both parties' names appear to be on the account: because it is a business name.

{¶ 13} After obtaining leave from the trial court, Mr. Bursley supplemented the record on February 6, 2018, with the following: (1) "The business owned the *plan* that provided for the individual 401(k) account. * * * Plaintiff has documentation of this that was not available at the time of trial." (Emphasis sic.); and (2) "Plaintiff requests the opportunity to call Jay Wynne of American Heritage Securities, Inc. Plaintiff also requests the opportunity to submit additional information that was not available at time of trial and/or was not submitted into evidence by his prior counsel and/or was not requested by his prior counsel." Mr. Bursley argued that the failures and decisions of his prior counsel directly impacted the hearing because "a complete picture of the parties' financials" was not before the magistrate. No additional documentation or affidavits accompanied Mr. Bursley's supplemental objections.

{¶ 14} Mrs. Bursley responded to Mr. Bursley's objections by pointing out that "nowhere in any of Plaintiff's documentation does he support his position with any legal authority or reference of factual support from the transcript or exhibits. Plaintiff's objections are in truth, cursory statements that Plaintiff hopes are supported by some

7.

factual basis from the transcript that he apparently expects the Court to hunt and find." Mrs. Bursley argued Mr. Bursley's premarital "401(k)" was an individual retirement account, which she conceded could not be held jointly with her, so the disputed account in both names "cannot be the separate property of Appellant as the only accounts identified in his pre-nuptial agreement are individual retirement accounts." Mrs. Bursley then refuted each of Mr. Bursley's objections using the evidence in the record.

{¶ 15} Where a party timely files objections to a magistrate's decision, the trial court is required to rule on the objections after "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). This "independent review" is the equivalent of a de novo determination. *Barker v. Barker*, 6th Dist. Lucas No. L-00-1346, 2001 Ohio App. LEXIS 2012, *9 (May 4, 2001).

{¶ 16} The evidence in the record for the trial court's de novo review included the parties' separation agreement and the testimony and admissible evidence elicited during the hearing before the magistrate. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

2. Separation Agreement

{¶ 17} The parties submitted a signed separation agreement with their petition to dissolve their marriage, and the trial court incorporated the separation agreement into its October 11, 2012 decree. "A petition for dissolution must be signed by both spouses and

8.

incorporate a separation agreement agreed to by both spouses. The separation agreement

must provide for the division of all property * * *." *Morris v. Morris*, 148 Ohio St.3d

138, 2016-Ohio-5002, 69 N.E.3d 664, ¶ 17, citing R.C. 3105.63(A)(1). "The court has

no unilateral authority to modify any provision of the separation agreement." *Id.* at ¶ 18,

citing R.C. 3105.65(A). When a trial court grants a decree of dissolution that

incorporates the separation agreement, the separation agreement becomes a binding

contract between the parties. *Id.*

{¶ 18} The trial court, however, retains the power to clarify and construe clauses

to resolve disputes over the proper interpretation of them. *Long v. Long*, 6th Dist. Lucas

No. L-07-1241, 2008-Ohio-2380, ¶ 18. "In interpreting a divorce decree that

incorporates the parties' separation agreement, the normal rules of contract interpretation

generally apply to ascertain the meaning of the language." *Sullivan v. Sullivan*, 6th Dist.

Lucas No. L-09-1022, 2010-Ohio-3064, ¶ 16, quoting *Yarder v. Scherer*, 6th Dist. No.

L-03-1035, 2003-Ohio-6744, ¶ 15. The principal goal is to effectuate the parties' intent

by giving common words their ordinary meaning, unless a manifest absurdity results or

unless another meaning is clearly evident. *Id.* Contracts are generally construed against

the drafter. *Rohlman v. Rohlman*, 2018-Ohio-1543, 110 N.E.3d 1006, ¶ 14 (6th Dist.).

{¶ 19} We first look to the parties' separation agreement for the relevant clauses.

Article 4(C), entitled, "Division of Property: Pension and/or Retirement Plan," states:

> Husband has a pension and/or retirement plan through his place of
>
> employment. All amounts in husband's 401(k) earned prior to the date of

9.

marriage are the sole property of husband per the Antenuptial Agreement of the parties. Any amounts paid into the Uni-K plan, including any gains therefrom, from the date of marriage to the date of dissolution shall be divided equally between the parties, subject, however, to the following provision. There currently exists a loan on Husband's 401(k) in the amount of $4,044.72. Wife's one-half of the marital component of husband's plan shall be reduced by $2,022.36, which represents her half of the loan amount. Thereafter, husband shall be responsible for payment of the 401(k) loan. Wife is not entitled to any appreciation from husband's separate premarital contributions to said plan. Qualified Domestic Relations Orders shall issue to implement this provision, with the costs thereof being divided between the parties.

{¶ 20} Article 8, entitled, "Complete Settlement," states:

Unless otherwise specifically mentioned or allowed by law, this agreement shall be a full and complete settlement of all rights between the parties, each of whom does by the provisions hereof, release, satisfy and discharge all claims and demands against the other, including * * * all property which each now owns or may hereafter acquire, except as provided in this agreement. It is the intent of the parties that the terms of this Agreement be submitted to a Court of proper jurisdiction to eventually be embodied into an order of dissolution or of divorce. The parties

intended that they be bound by said terms whether or not their marriage is terminated by any dissolution or divorce.

{¶ 21} Article 10(B) is a miscellaneous clause which states, "The provisions of this agreement shall not be modified or changed except by mutual consent and agreement of the parties hereto expressed in writing."

{¶ 22} We find the separation agreement stated the balance in a "401(k)" retirement account that existed prior to the date of the marriage was Mr. Bursley's separate property "per the Antenuptial Agreement of the parties." Antenuptial (or prenuptial) agreements are enforceable if three conditions are met: (1) if the parties entered into it freely without fraud, duress, coercion or overreaching; (2) if the parties had full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms of the agreement do not promote, encourage or profiteer by divorce. *Fletcher*, 68 Ohio St.3d at 466, 628 N.E.2d 1343. However, we do not have the antenuptial agreement to review. The details of the "401(k)" account balance prior to the marriage are not found in the separation agreement.

{¶ 23} We find the separation agreement also stated that Mrs. Bursley "is not entitled to any appreciation from husband's separate premarital contributions to [the Uni-K] plan." The "Uni-K" is further referenced only to state that additions and gains to the "Uni-K" during the marriage would be equally divided, subject to a loan. The details of the "Uni-K" account balance prior to the marriage are not found in the separation agreement.

11.

**{¶ 24}** We find the separation agreement provided little support to meet Mr. Bursley's burden by a preponderance of the evidence of his separate property. Mr. Bursley could not trace any non-marital components of the "401(k)" and "Uni-K" accounts in the separation agreement to the disputed account. We find the trial court had the authority to clarify and construe the separation agreement, and we will not disturb the trial court's determination the disputed account was marital property. In doing so, we find the trial court did not modify the separation agreement.

### 3. Magistrate Hearing

**{¶ 25}** At the September 26, 2017 hearing, the parties agreed their August 18, 1999 antenuptial agreement was not in the record. Nevertheless, Mr. Bursley held the position that if reference to the antenuptial agreement was unrebutted by other evidence in the record, the court must accept the information as true and accurate. Specifically, Mr. Bursley argued his "Court Form 2" affidavit of income, expenses and property filed on September 11, 2012, identified $188,000 for his premarital retirement account which should be considered to be the same as the reference to the antenuptial agreement in the separation agreement. Mrs. Bursley disagreed and testified she objected because, "I was hoping to come to an agreement."

**{¶ 26}** The magistrate sought clarification during the September 26, 2017 hearing:

> The Court: Now, my question to Mr. Bursley is this, if I read his Court Form 2 correctly, from the dissolution, he says, on Page 9 of 13 of his Court Form 2, 401K plan, UNI-K plan, $188,000 [the present fair

market value of his "pensions & retirement plans" assets]. So then if I go then [sic] to Page 12 [his claims of separate property pursuant to R.C. 3105.171(A)(6)(a)], and it says property owned before marriage, 401K plan, present fair market value, $188,000; present debt, $6,516, and then I look at the separation agreement which was prepared by Mr. Bursley and his attorney, on Page 3 of the separation agreement under pension and/or retirement plan, any amounts paid into the UNI-K plan, including any gains therefrom from the date of the marriage to the date of the dissolution shall be divided equally between the parties, subject however, to the following [loan] provision: * * *. So my question to you, Mr. Bursley, is given all of that, you didn't think [the marital portion] had any value, but you agreed to a separation agreement which your attorney drafted, and you signed that?

Mr. Bursley: Correct.

* * *

The Court: Court Form 2 doesn't mention any value of the marital component; does it, Mr. Bursley?

Mr. Bursley: Not to my knowledge.

{¶ 27} Mr. Bursley then called to testify on his behalf William Kimmelman, a QDRO and financial expert. Mr. Kimmelman testified, "My opinion is there was no marital component to the retirement plan as it existed on the date of the divorce (UNINTELLIGIBLE). (sic.)" His written opinion letter was not found in the record.

Mr. Kimmelman testified at the time of the marriage, Mr. Bursley's retirement portfolio was valued at approximately $279,700, and at the time of divorce, his retirement portfolio value was $197,317.76.

{¶ 28} Mr. Kimmelman testified as to the limitations of his opinion. He testified that he relied on the documentation provided by Mr. Bursley to indicate the QDRO's compliance with Article 4(c) of the separation agreement. However, Mr. Kimmelman acknowledged Mr. Bursley's documents had "significant gaps or omissions" due to Mr. Bursley's employment history, the merger of his "line benefit pension plan * * * into a cash basis plan" in 2000, and the lack of any documentation of contributions by Mr. Bursley or his employer during the marriage from 1999 to 2002. When asked if he was "able to make any determinations [of marital and non-marital property] based on research," Mr. Kimmel testified:

> I really didn't. Other than my professional opinion that over the course of the marriage, if anything, Mr. Bursley's retirement plan declined in value rather than increase in value, and whether there were contributions made from 1999 to 2002 when he was terminated, they would suffer the same losses that his retirement benefits that he had at the time they were married as well.

{¶ 29} In answering why the proposed QDRO "isn't sufficient in my opinion," Mr. Kimmelman testified:

The [QDRO] will be rejected by the plan administrator, because they will say we will not do those [non-marital vs. marital] component calculations, * * * because we would have to express an opinion as to what's marital property and what's not, and have information that's outside of the scope of the document. * * * So, it's basically incumbent upon the draftor [sic] of the document and the Court to instruct the plan as to what the marital share would be as of that – date of the divorce.

{¶ 30} The magistrate then announced his decision and findings at the conclusion of the hearing:

I'm prepared to render a decision. * * * Magistrate finds that these parties were granted a dissolution of their marriage by consent judgment entry October 11, 2012. Both parties were represented by counsel. The judgment entry was drafted by petitioner-husband, and his attorney. The separation agreement incorporated into the parties' decree contains the following provision on Page 3 subsection C, as in Charlie, pension and/or retirement plan. [Entire subsection read.] * * *. Subsequent thereto, the Magistrate finds that a proposed qualified domestic relations order has been submitted to the Court. * * *

The Magistrate specifically finds that Mr. Kimmelman's testimony is unreliable, and therefore, cannot be, unfortunately, of tremendous use to the Court or Magistrate in rendering a decision in this cause. The testimony

15.

is clear that there are gaps in the documents that Mr. Bursley provided to Mr. Kimmelman. In addition, Mr. Kimmelman's testimony at no point in time did I hear that anything he was testifying to was his opinion to a reasonable degree of professional certainty. In addition, Mr. Kimmelman's testimony, with regard to ownership interest in the 401K plan is something that he couldn't explain. He couldn't explain away the appearance of the documentation. He doesn't know how that it was able to happen, but nevertheless, the documentation that he examined showed that it clearly did. Don't have any explanation one way or the other, whether or not it's correct. I don't have any reliable evidence to show that it is impossible. Nobody's quoted me any law that would suggest to me that it's impossible. * * * Any issues with regard to separate property are the burden of the person who is proposing that position.

So, it appears that the qualified domestic relations order as submitted does comply with the terms of the separation agreement. So, therefore, Mr. Bursley, having failed to meet his burden of persuasion with regard to the separate property component, [I] find that the motion's well taken, and the proposed qualified domestic relations order should be approved as submitted.

The Magistrate supposes, but does not find, that if the plan administrator believes that there is some sort of separate property

component, then the Magistrate supposes that the QDRO would be rejected by the plan administrator, and the parties would find themselves back to where they are at the present time.

But the fact of the matter is, the documentation that we have seems to indicate that there is no * * * premarital component, and again, it's the petitioner-husband's burden to show that there is. And, he's failed to do so by a preponderance of competent, credible evidence. The Magistrate makes that specific finding.

{¶ 31} The magistrate's decision was filed on November 29, 2017, and journalized on December 4, 2017. That day, the trial court judge journalized his judgment entry reaching the same findings as the magistrate and approving the magistrate's decision.

{¶ 32} We find there was conflicting evidence in the record of whether Mr. Bursley claimed as his separate property $120,866, $188,000, $197,317.76, $277,346 or $279,700. Nevertheless, the evidence from the hearing did not clearly trace any separate property component of the disputed account.

Q: You haven't gone back and you haven't analyzed the Bursley actual retirement account?

A: No.

Q: You haven't taken it from one account to the next, to the next, as they were changed from one type of investment to another?

A. Right (UNINTELLIGIBLE). (sic.)

**{¶ 33}** Mr. Bursley's expert did not trace the funds since prior to the marriage and relied on Mr. Bursley's own, incomplete information and testimony to reach his opinion the disputed account was entirely Mr. Bursley's separate property. Therefore, we find that the evidence elicited during the hearing provided little support to meet Mr. Bursley's burden by a preponderance of the evidence of his separate property. The trial court determined the weight to be given the evidence and the credibility of the witnesses, and we will not disturb the trial court's classification of the disputed account as marital property.

4. Overruling Objections to Magistrate's Decision

**{¶ 34}** On March 22, 2018, the trial court filed its judgment entry in which it overruled each of Mr. Bursley's objections, granted Mrs. Bursley's motion to enforce the separation agreement, and approved the QDRO as submitted. R.C. 3105.10(B)(2). The trial court stated:

> The Court, having conducted a careful and independent review of the matter, including the transcript of proceedings, finds that the Magistrate has properly determined the factual issues, that the Magistrate has applied the law correctly to the facts, and that the facts as found by the Magistrate are supported by competent, credible evidence and further support the conclusions of law reached by the Magistrate.

**{¶ 35}** We reviewed the entire record and find the trial court conducted a de novo review of the objections and found some competent, credible evidence in the record to

support denying Mr. Bursley's objections.  The trial court determined Mr. Bursley failed to show by a preponderance of evidence in the record that any identifiable component of the disputed account was his separate property.  The trial court determined the weight and credibility of the evidence in the record, and we will not disturb those findings.  We find the trial court's factual findings on the classification of the entire disputed account as marital property was not against the manifest weight of the evidence.

{¶ 36} Mr. Burley's first assignment of error is not well-taken.

B.  Marital Property Division

{¶ 37} We will address appellant's second and third assignments of error together as they collectively challenge the trial court's determination of marital property division.

{¶ 38} In support of his second and third assignments of error, Mr. Bursley argued the trial court lacked subject-matter jurisdiction to approve the "second" QDRO filed with the court on May 23, 2017.  Mr. Bursley argued evidence of the "fact" of "significant" premarital property is found in the separation agreement referencing the prenuptial agreement, a "first" QDRO allegedly identifying $120,866.00, his "Court Form 2" identifying $188,000, and Mr. Kimmelman's testimony identifying $279,700.  On December 13, 2017, Mr. Bursley filed an objection to the magistrate's decision arguing the May 23, 2017 QDRO did not comply with the separation agreement, rendering the QDRO legally and factually "defective."  Mr. Bursley further argued the trial court clearly lacked subject-matter jurisdiction to ignore the separation agreement

and "suddenly vaporize" his significant premarital property to render it marital property subject to division.

{¶ 39} In response, Mrs. Bursley argued the trial court had subject-matter jurisdiction over the only QDRO in the record: the QDRO filed on May 23, 2017. Mrs. Bursley further argued Mr. Bursley waived all arguments he did not first raise in his objections to the magistrate's decision, including his claim to a "first" QDRO.

{¶ 40} We review the trial court's division of marital and separate property for an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 41} On March 22, 2018, the trial court filed its judgment entry overruling Mr. Bursley's objections. The trial court approved the QDRO that divided the entire disputed account evenly between the parties pursuant to the separation agreement. "The court may modify the division of property provided in the separation agreement only upon the express written consent or agreement of both spouses." R.C. 3105.63(B). For the following reasons, we find the trial court did not modify the division of property in the separation agreement.

{¶ 42} As a preliminary matter, subject-matter jurisdiction, which goes to the power of the trial court to adjudicate the merits of a case, may be challenged at any time.

20.

*Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. We review de novo the question of law whether a trial court had subject-matter jurisdiction. *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 17; *Sullivan*, 6th Dist. Lucas No. L-09-1022, 2010-Ohio-3064, at ¶ 14.

{¶ 43} In a divorce proceeding the trial court is required to divide the marital and separate property equitably between the spouses. R.C. 3105.171(B). "Trial courts are vested with broad discretion in determining the appropriate scope of these property awards." *Everhardt v. Everhardt*, 6th Dist. Lucas No. L-86-060, 1987 Ohio App. LEXIS 5892, *5 (Feb. 6, 1987).

{¶ 44} We find any additional proffers of facts from Mr. Bursley's appellant briefs that were not otherwise contained in the trial court record are not before this court on appeal. App.R. 9(A)(1). For example, Mr. Bursley described in his briefs a "first" QDRO that allegedly contained in Section 7 language for Mr. Bursley to retain certain funds as his separate property. Mr. Bursley argued the "first" QDRO was either introduced at a hearing on October 29, 2015, or attached to Mrs. Bursley's May 23, 2017 motion. Our review of the entire record did not reveal more than one QDRO. Rather, the QDRO attached to Mrs. Bursley's May 23, 2017 motion was the same admitted into evidence as Exhibit A at the September 26, 2017 hearing and subsequently approved by the trial court.

{¶ 45} The statute for division of marital property states, "Except as provided in this division * * *, the division of marital property shall be equal. * * * In making a

21.

division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." R.C. 3105.171(C)(1). One of those factors is, "Any division * * * of property made in a separation agreement that was voluntarily entered into by the spouses." R.C. 3105.171(F)(8). Another factor for trial court consideration are the retirement benefits of the spouses. R.C. 3105.171(F)(9). The trial court may also consider any other relevant and equitable factor. R.C. 3105.171(F)(10).

{¶ 46} "A QDRO is a domestic relations order which recognizes the right of an alternative payee to receive all or a portion of the retirement benefits payable to a retirement plan participant." *Long*, 6th Dist. Lucas No. L-07-1241, 2008-Ohio-2380, at ¶ 7, citing 26 U.S.C. 206(d)(3)(i)(I) and 414(p)(1)(A)(i).

> [A] QDRO is different from the usual court order. * * * The QDRO must be drafted to include very specific information with explicit instructions to the plan administrator. It is then the responsibility of the plan administrator to review the order of the trial court and determine whether it constitutes a QDRO pursuant to Section 414(p), Title 26, U.S. Code. The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution. A divorce decree is a final, appealable order, regardless of whether it calls for a QDRO that has not yet issued; the QDRO merely implements the divorce decree. Consequently, a QDRO is merely an order in aid of execution on the property division ordered in the divorce or dissolution decree. So long as the QDRO is

22.

consistent with the decree, it does not constitute a modification, which R.C.

3105.171(I) prohibits, and the court does not lack jurisdiction to issue it.

(Citations omitted.)

*State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214,

¶ 18-19.  We find the trial court had subject-matter jurisdiction to order the QDRO in this

matter.

{¶ 47} The magistrate sought clarification of the QDRO at the September 29, 2017

hearing from Mr. Bursley's expert:

The Court:  If there is no premarital share, [the proposed QDRO]

would be correct?  If, and I understand in your estimation, that's a huge if.

Mr. Kimmelman:  That's correct.  If there was no premarital share,

this order would divide up 50 percent of the balance that was in that

account at the time they got a divorce.

{¶ 48} The parties' separation agreement showed an intent to equally divide the

marital property.  The trial court previously determined the disputed account was marital

property.  Having found the trial court had subject-matter jurisdiction to order the QDRO,

we find the QDRO order equally divided the disputed account consistent with the

separation agreement.  We further find the trial court conducted a de novo review of Mr.

Bursley's objections to the QDRO and found some competent, credible evidence in the

record to support denying those objections.

23.

**{¶ 49}** We reviewed the entire record and did not find the court's attitude was unreasonable, arbitrary or unconscionable in its evaluation of the evidence before determining the division of the parties' marital property. We find the trial court did not abuse its discretion when it denied the objections and divided the marital property equally between the parties.

**{¶ 50}** Mr. Bursley's second and third assignments of error are not well-taken.

**{¶ 51}** The judgment of the Huron County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                                                                            JUDGE
Thomas J. Osowik, J.          

                                                                                                    _____
Christine E. Mayle, P.J.                                                   JUDGE
CONCUR.

                                                                                                    _____
                                                                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.