775 N.W.2d 438 (2009)
18 Neb. App. 75
Ronald FRY, Appellant,
v.
Janet R. FRY, Appellee.
No. A-09-011.
Court of Appeals of Nebraska.
October 27, 2009.
*440 David A. Domina and Mark D. Raffety, of Domina Law Group, P.C., L.L.O., Omaha, for appellant.
Susan A. Anderson, of Anderson & Bressman Law Firm, P.C., L.L.O., Omaha, for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Over 2 years after entry of an unappealed divorce decree, the parties filed motions seeking to compel the entry of a qualified domestic relations order (QDRO) to comply with the decree. After various orders and motions to amend, the district court entered the operative QDRO, which awarded an amount referenced in the decree but also included postjudgment interest. We conclude that the court had *441 jurisdiction to enter the QDRO, that it correctly construed the decree, and that it did not err in ordering postjudgment interest.

BACKGROUND
The district court dissolved the marriage of Ronald Fry and Janet R. Fry in a July 17, 2006, decree of dissolution. Pertinent to this appeal is the following provision:
14. Profit[-]Sharing Plan. [Ronald] enjoys an American Bar Association AKC Profit[-]sharing plan with an accumulated value of $635,243 as of January 1, 2005. All of the accumulation has occurred during the course of the marriage. There are tax consequences for withdrawals from the plan by either party, but either party will determine by their own choices how and when the taxable events will occur. [Ronald] is awarded the profit[-]sharing plan. [Janet] is awarded a portion of the plan which is $182,599.00. Counsel shall prepare a [QDRO] to facilitate transfer of the funds.
On September 11, 2008, Ronald filed a motion to reopen the case and a motion to compel entry of the QDRO. Ronald attached a proposed QDRO which assigned to Janet $182,599 of Ronald's "total [a]ccrued [b]enefit as of the [a]ssignment [d]ate (July 14, 2006)." Four days later, Janet filed a motion to compel the entry of a QDRO, a copy of which she attached to her motion. Her proposed QDRO stated that her portion of the plan "shall be proportionately divided among the investments in the same manner as [Ronald's] account was allocated as of January 1, 2005[,] and allocated in a manner which assures that [Ronald] and [Janet] each receive an equal tax basis in their respective portion of said account."
On October 17, 2008, the court held a hearing and received exhibits. On October 30, the court entered an order on the motions. The court determined that the language of paragraph 14 of the decree was clear and unambiguous. The court found that the QDRO proposed by Ronald comported with the decree. Also on October 30, the court entered a QDRO. It awarded interest at the rate of 6.849 percent from July 17, 2006, until the amount was transferred to Janet.
On November 6, 2008, Ronald filed a motion to alter or amend the order, because the QDRO the court signed and attached was that proposed by Janet. Ronald alleged that ordering him to pay postjudgment interest was contrary to law and that it was unclear on what amount the interest was to be paid. On November 20, Janet filed a motion to amend the QDRO in which she stated that on November 13, she was advised that the exact amount of interest and the fund from which the amount should be withdrawn must be specified "as the Stable Asset Return Fund." She attached an amended QDRO to comply with "ABA Retirement Funds requirements."
After holding a hearing on November 25, 2008, the court entered an order on the motions on December 8. The court adopted the QDRO that Janet attached to her motion to amend because it directed that the specific sum contained in the decree, plus interest, be paid to her out of Ronald's profit-sharing plan. The court overruled Ronald's motion to alter or amend. On December 15, the court entered a second amended QDRO, which awarded Janet $182,599, together with interest thereon at the rate of 6.849 percent from July 17, 2006, until December 8, 2008, for a total of $212,576.50 ($182,599 + $29,977.50 in interest).
Ronald timely appeals.

*442 ASSIGNMENTS OF ERROR
Ronald assigns three errors. First, he alleges that the district court lacked subject matter jurisdiction to issue an order construing the meaning of the decree more than 1 year after it was entered and without being asked to do so in a declaratory judgment action or under Neb.Rev.Stat. § 25-2001 (Reissue 2008). Second, he contends that the court misconstrued the decree as a matter of law in deciding to treat the division of retirement funds as a monetary judgment. Finally, Ronald claims that the court erred in treating the division of profit-sharing funds between the parties as a judgment against Ronald bearing postjudgment interest because Ronald could not satisfy the judgment by making a payment or taking any unilateral action to satisfy the profit-sharing funds awarded to Janet.

STANDARD OF REVIEW
The meaning of a decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. See Strunk v. Chromy-Strunk, 270 Neb. 917, 708 N.W.2d 821 (2006).
Whether a subsequently entered QDRO is consistent with the terms of the decree is to be determined as a matter of law. See Blaine v. Blaine, 275 Neb. 87, 744 N.W.2d 444 (2008).

ANALYSIS

Jurisdiction.
A decree dissolving a marriage becomes final and operative 30 days after the decree is entered. Neb.Rev.Stat. § 42-372.01 (Reissue 2008). See, also, Neb.Rev.Stat. § 42-372 (Reissue 2008). Neither party appealed from the decree, and Ronald asserts that the district court lacked jurisdiction to issue an order construing the dissolution decree more than 1 year after entry of the decree. He contends that only a declaratory judgment action under Neb.Rev.Stat. § 25-21,149 et seq. (Reissue 2008) or a timely proceeding under Neb.Rev.Stat. § 25-2001 et seq. (Reissue 2008) could have empowered the court to adjudicate what the original decree meant.
A district court has the inherent power to determine the status of its judgments. Jensen v. Jensen, 275 Neb. 921, 750 N.W.2d 335 (2008). A QDRO is, generally speaking, simply an enforcement device of the decree of dissolution. Blaine v. Blaine, supra. Accordingly, we conclude that the court had jurisdiction to enter the QDRO disposing of Ronald's profit-sharing plan as set forth in the decree.

Construing Decree.
Ronald next argues that the district court erred in construing the decree. It is well settled that once a decree for dissolution becomes final, its meaning is determined as a matter of law from the four corners of the decree itself. Blaine v. Blaine, supra. The district court found paragraph 14 of the decree to be unambiguous, and we agree. Where the terms of a final decree are unambiguous, a QDRO enforcing that decree must dispose of assets in the manner required by the decree. Blaine v. Blaine, supra. In particular, the QDRO should reflect the value assigned and awarded in the decree. Id. The paragraph plainly awarded Ronald the profit-sharing plan and awarded Janet $182,599 from the plan. The QDRO entered by the court did just that, and we find no error. Next, we address the court's inclusion of interest in the QDRO.

Interest.
Ronald's final challenge concerns the court's award of post-judgment interest. *443 The second amended QDRO awarded Janet $212,576.50, which amount included $29,977.50 in interest at 6.849 percent accumulated from July 17, 2006, until December 8, 2008.
Under Neb.Rev.Stat. § 45-103.01 (Reissue 2004), "Interest as provided in section 45-103 shall accrue on decrees and judgments for the payment of money from the date of entry of judgment until satisfaction of judgment." The language of § 45-103.01 is mandatory, and a court of equity does not have discretion to withhold interest on decrees or judgments for the payment of money. Bowers v. Lens, 264 Neb. 465, 648 N.W.2d 294 (2002). A decree or judgment for the payment of money is one which is immediately due and collectible where its nonpayment is a breach of duty on a judgment debtor. Welch v. Welch, 246 Neb. 435, 519 N.W.2d 262 (1994). Interest does not accrue until the debt becomes due. Id.
In Cumming v. Cumming, 193 Neb. 601, 228 N.W.2d 296 (1975), the Nebraska Supreme Court reasoned that although any or all of a $37,000 equalization payment may be paid at any time, none was required to be paid until the petitioner received the distribution of her share from her father's estate. The court therefore determined that interest on the unpaid balance of the $37,000 judgment would accrue from the date of the decree of distribution assigning her share of her father's estate. Subsequently, in Kullbom v. Kullbom, 215 Neb. 148, 337 N.W.2d 731 (1983), the Nebraska Supreme Court appeared to change course. In Kullbom, a decree ordered appellee to pay $37,566.75 of his pension and profit-sharing trusts to appellant as part of the property division, but he was not required to make any part of the payment until he received a distribution from the trusts. The district court did not award any interest on appellant's share of the trusts. On appeal, the Kullbom court cited and discussed Cumming, but the majority then determined that interest on any unpaid balance of the $37,566.75 shall accrue from the date of the divorce decree, "which was when the [d]istrict [c]ourt should have assigned to appellant her share of appellee's pension and profit-sharing trusts." Kullbom, 215 Neb. at 150, 337 N.W.2d at 732.
Vertical stare decisis compels lower courts to follow strictly the decisions rendered by higher courts within the same judicial system. State v. Hausmann, 277 Neb. 819, 765 N.W.2d 219 (2009). Based upon Kullbom, the district court did not err in awarding interest from July 17, 2006the date of the divorce decree because that is when Janet was assigned her share of Ronald's profit-sharing plan.
Before closing, we emphasize that the difficulties posed by this appeal could have been eliminated by care and precision in the drafting of the decree and, where the trial court determined use of a QDRO was appropriate, by prompt entry of the necessary order. We have noted numerous recent instances of cases involving substantial delay in the entry of a QDRO. See, Schwartz v. Schwartz, 275 Neb. 492, 747 N.W.2d 400 (2008); Blaine v. Blaine, 275 Neb. 87, 744 N.W.2d 444 (2008); Klimek v. Klimek, 18 Neb.App. 82, 775 N.W.2d 444, 2009 WL 3451117 (2009); Incontro v. Incontro, No. A-01-1068, 2003 WL 1962884 (Neb.App. Apr. 29, 2003) (not designated for permanent publication). Manifestly, the failure to promptly follow through with appropriate orders has resulted in unnecessary delay and considerable expense. The statutory requirements for a QDRO are not complex. See, I.R.C. § 414(p) (2000); 29 U.S.C. § 1056(d)(3) (2006). The Internal Revenue Service has issued publications intended to assist attorneys in *444 drafting a QDRO. See I.R.S. Notice 97-11, 1997-1 C.B. 379.
We suggest that the ultimate responsibility for assuring that a proper decree is entered, and for entry of a QDRO if the court determines that the situation so requires, rests upon the trial judge. While the judge may call upon the assistance of counsel, the decree and the QDRO are orders of a court and not mere agreements of the parties. Consequently, the responsibility for the entry of a necessary QDRO is the trial court's. Ideally, the QDRO should be entered simultaneously with the decree, if not actually made a part thereof. In this way, the parties know exactly how the pension or retirement accounts will be divided, as will we, in the event of an appeal. To that end, trial courts should seriously consider requiring submission of proposed QDRO's at the time of trial or along with a decree that the court directs counsel to prepare. While a decree making a division of retirement accounts and providing for a later QDRO is final because the QDRO is merely a tool for enforcement of the decree, see Blaine v. Blaine, supra, the delay in entry of a QDRO invites complications and potentially additional expense and litigation, all of which can, and should, be avoided. To that end, we encourage trial courts to implement procedures to ensure that their responsibility to enter QDRO's is fulfilled at the same time as the decree is entered, bearing in mind that in practice, the drafting of a QDRO may require approval by the retirement plan administrator, which counsel can secure prior to submitting the QDRO to the court.

CONCLUSION
Even though more than 2 years passed following entry of an unappealed decree, we conclude that the district court had jurisdiction to enter the QDRO in accordance with the terms of the decree, because a QDRO is merely an enforcement device. Based upon Kullbom v. Kullbom, 215 Neb. 148, 337 N.W.2d 731 (1983), we conclude that the court did not err in awarding judgment interest on Janet's share of the profit-sharing plan accruing from the date of the divorce decree.
AFFIRMED.