782 N.W.2d 339 (2010)
18 Neb. App. 384
Brian L. HALL, appellant,
v.
Kristen K. HALL, appellee.
No. A-09-839.
Court of Appeals of Nebraska.
May 11, 2010.
*340 Louie M. Ligouri, Auburn, of Ligouri Law Office, for appellant.
David J. Partsch, of Hoch, Partsch & Noerrlinger, Nebraska City, for appellee.
INBODY, Chief Judge, and MOORE and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
In 2009, Kristen K. Hall sought the enforcement of a provision in a 2005 dissolution decree which required her and her former husband, Brian L. Hall, each to submit a qualified domestic relations order (QDRO) dividing both parties' retirement plan benefits. Brian appeals from a district court order which required him to *341 provide the court with a proposed QDRO within 30 days. Because the order does not affect a substantial right, it is not a final order and we lack jurisdiction to hear this appeal.

BACKGROUND
The parties' marriage was dissolved pursuant to a decree dated November 4, 2005. The decree contained a provision which provided as follows regarding the division of the parties' retirement accounts:

RETIREMENT AND IRA ACCOUNTS. The Court orders that the parties['] net retirement accounts held by the Nebraska School Retirement System and the Nebraska Public Power District shall be divided equally between the parties. A [QDRO] shall be prepared by the [p]arties. The parties may hire any professional needed for preparation of a QDRO to carry out this provision. The parties shall equally split the cost of any professional needed. The date of the split of the accounts after their separation but before this hearing has been agreed to by the parties.
At the dissolution proceeding, the parties agreed to a date for purposes of valuation, which was June 22, 2005. Retirement account statements offered into evidence at the dissolution proceeding indicated the respective values of Brian's and Kristen's retirement accounts as of June 30.
Brian appealed the district court's decision to this court in case No. A-05-1443, and we affirmed the district court's decision in a memorandum opinion filed on July 13, 2007.
The instant proceeding pertains to a May 4, 2009, "Motion to Compel" Kristen filed in which she requested that the court enter an order compelling Brian to split the parties' retirement accounts as required by the dissolution decree.
At the hearing on the motion, counsel for both parties agreed that Kristen had cashed in her retirement account that was subject to the dissolution decree without any QDRO's having been entered. The record also contains documents which indicate that Brian had requested that Kristen agree to take half of his retirement account as of June 30, 2005, less the amount Brian was to receive from her retirement account, and adjusted for the earnings and losses that accrued to the account since that time. According to Brian's counsel, Brian's account sustained losses after June 22.
On July 31, 2009, the court entered an order which stated that Brian "has 30 days from the date of the filing of this written order to file with the court the proper QDRO implementing [the provisions of the dissolution decree] as set out in the agreement of the parties and confirmed in this opinion." According to the order, the later QDRO was supposed to provide that Kristen would receive half of Brian's account balance as of June 30, 2005, minus the value of half of Kristen's retirement account on the same date, or a total of $222,944.08. It was also to provide for Kristen to receive this amount from Brian's current account balance.
Brian filed a motion for a new trial, which the district court denied, and Brian timely appeals from this order. Pursuant to authority granted to this court under Neb. Ct. R.App. P. § 2-111(B)(1) (rev. 2008), this case was ordered submitted without oral argument.

ASSIGNMENTS OF ERROR
Although we do not reach Brian's assigned errors, we note that in general, Brian asserts that the court erred in (1) awarding Kristen the value of half of his retirement account as of June 30, 2005, *342 when his account subsequently sustained losses; (2) allowing Kristen to retain her entire retirement account which the dissolution decree required her to split; and (3) requiring Brian to provide the court with a QDRO that remedied Kristen's violation of the original decree.

STANDARD OF REVIEW
A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. Midwest PMS v. Olsen, 279 Neb. 492, 778 N.W.2d 727 (2010). An appellate court reviews questions of law independently of the lower court's conclusion. Id.

ANALYSIS
Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. Connelly v. City of Omaha, 278 Neb. 311, 769 N.W.2d 394 (2009). Notwithstanding whether the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte. Id.
Because we conclude that an order which directs a party to draft a proposed QDRO is not a final, appealable order, we conclude that we lack jurisdiction to hear the instant case. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. Id. An order is final for purposes of appeal if it affects a substantial right and (1) determines the action and prevents a judgment, (2) is made during a special proceeding, or (3) is made on summary application in an action after judgment is rendered. Williams v. Baird, 273 Neb. 977, 735 N.W.2d 383 (2007).
Because judgment has already been rendered in the dissolution decree, the order would fall within the third category of possible final orders, i.e., an order made on summary application in an action after judgment is rendered. Thus, the critical question is whether the district court's order affected a substantial right.
We have previously determined that we have jurisdiction over appeals from a district court's entry of a QDRO even when the QDRO has been entered a number of years after the dissolution decree. Fry v. Fry, 18 Neb.App. 75, 775 N.W.2d 438 (2009). We reached this conclusion because "[a] district court has the inherent power to determine the status of its judgments" and a QDRO is "simply an enforcement device of the decree of dissolution." Id. at 79, 775 N.W.2d at 442. Therefore, the entry of a QDRO affects a substantial right.
However, the district court order in the instant case does not similarly affect a substantial right. We distinguish the instant case from Fry v. Fry, supra, because the order before us does not enforce the terms of the dissolution decree as does a QDRO. The order simply requires the submission of a QDRO which, if approved by the court, would enforce the decree. In essence, the order does not place either of the parties in a position substantially different from the position that either one was in prior to the entry of the order because the pension funds still are not divided.
In fact, the order impacts only a technical right and not a substantial right because the court is not bound by its own determinations contained in the order. Because the court's determinations do not effect a distribution of the parties' assets, during the interim between the entry of *343 the instant order and the later QDRO contemplated by the instant order, there would be nothing to prevent the district court from changing its mind regarding the content of the later order and none of the parties' rights concerning division of the pension funds would have been affected during the interim. Because no substantial right is affected by the instant order, it is purely interlocutory and not appealable.

CONCLUSION
Because there is no final order, we lack jurisdiction to consider this appeal.
APPEAL DISMISSED.