785 N.W.2d 159 (2010)
18 Neb. App. 478
Susan Kaye THOMPSON, appellant,
v.
Gary Dean THOMPSON, appellee.
No. A-09-612.
Court of Appeals of Nebraska.
July 6, 2010.
*160 Stephanie Weber Milone, Omaha, for appellant.
Michael B. Lustgarten, Omaha, and Justin A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
SIEVERS, Judge.
On May 11, 2010, we issued our opinion in this case, reported at Thompson v. Thompson, 18 Neb.App. 363, 782 N.W.2d 607 (2010), regarding the decree that dissolved the marriage of Susan Kaye Thompson and Gary Dean Thompson. In that opinion, we found that the trial court had erred with respect to its division of Susan's 401K account by dividing such equally and we ordered a division of 67 percent to Susan and 33 percent to Gary.
We now have before us a motion to vacate the qualified domestic relations order (QDRO) entered by the district court for Douglas County, Nebraska, on November 20, 2009, dividing Susan's 401K account in accordance with its decree of dissolution. The November 20 QDRO was entered while this case was pending on appeal to this court. We take the somewhat unusual measure of issuing a published opinion on a motion because of the unusual circumstances presented by the motion, coupled with our previous opinions in Fry v. Fry, 18 Neb.App. 75, 775 N.W.2d 438 (2009), and Klimek v. Klimek, 18 Neb. App. 82, 775 N.W.2d 444 (2009), which both encouraged trial courts to enter QDRO's simultaneously with decrees of dissolution or as soon as possible following the entry of a decree.
Our mandate has not yet issued, due to the pendency of the motion to vacate the QDRO of November 20, 2009. Accordingly, while we still have jurisdiction, we decline to vacate the trial court's QDRO of November 20.
In reaching this conclusion, we first examine the question of whether the trial court had jurisdiction to enter such QDRO, even though the case was pending on appeal, which appeal raised through proper assignments of error the claim that the trial court's division of Susan's 401K account was an abuse of discretion and incorrect.
We have found no authority in Nebraska resolving the issue presented by the motion to vacate with respect to what should be done at this juncture and by which court. However, in State ex rel. Sullivan v. Ramsey, 124 Ohio St.3d 355, 922 N.E.2d 214 (2010), the Ohio Supreme Court dealt with a similar issue, although the procedural *161 background was more complicated. In State ex rel. Sullivan, the husband and wife were divorced in 1997, and that decree included the approval of a property settlement agreement which provided for a transfer via a QDRO of 25 percent of the husband's monthly retirement benefit to the wife from his "`interest in his retirement plan with the Civil Service Retirement System, pursuant to the provision of the Spouse Equity Act of 1984.'" 124 Ohio St.3d at 356, 922 N.E.2d at 216. However, the contemplated QDRO was not ever entered, and in July 2006, the wife filed motions for approval of a QDRO, payment of retroactive benefits, and attorney fees. The trial judge, the appellant in the State ex rel. Sullivan case, entered a QDRO in January 2009 which provided that in the event the retirement plan administrator found that the distribution plan did not qualify, the parties could request an "`amendment or modification Order'" to be entered as a "`Nunc Pro Tunc if appropriate and Jurisdiction is hereby reserved for this purpose.'" 124 Ohio St.3d at 357, 922 N.E.2d at 217.
The husband appealed the entry of this QDRO to the Ohio Court of Appeals, but while that appeal was pending, the trial judge issued an amended QDRO which, while not changing the monthly benefit, contained some different recitations about the legal authority under which it was entered. The Ohio Supreme Court found three differences between the original QDRO and the amended QDRO; for example, the amended QDRO provided that it was entered under the Employee Retirement Income Security Act of 1974, whereas the original QDRO did not mention such act. The other differences between the two opinions are not pertinent for our purposes.
Three weeks after the issuance of the amended QDRO, the husband filed for a writ of prohibition with the court of appeals to vacate the amended QDRO and to prevent the trial judge from taking any further action that interfered with or was inconsistent with "the appellate court's ability to affirm, modify, or reverse" the original January 9, 2009, judgment and QDRO. State ex rel. Sullivan, 124 Ohio St.3d at 358, 922 N.E.2d at 218. The court of appeals immediately granted the requested writ of prohibition, and the trial judge appealed the writ, resulting in the Ohio Supreme Court's opinion under discussion.
In State ex rel. Sullivan, the Ohio Supreme Court recited the requirements for a writ of prohibition, which do not concern us, and then noted that it has consistently held that once an appeal is perfected, the trial court is divested of jurisdiction "`over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.'" 124 Ohio St.3d at 358, 922 N.E.2d at 218. The Ohio court then discussed the nature and purpose of a QDRO:
"The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution." Wilson v. Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7. "[A] divorce decree is a final, appealable order, regardless of whether it calls for a QDRO that has not yet issued; the QDRO merely implements the divorce decree." Id. at ¶ 15. Consequently, "[a] QDRO is merely an order in aid of execution on the property division ordered in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it." (Emphasis sic.) Bagley v. Bagley, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d *162 469, ¶ 26. Therefore, when a divorce decree is appealed and there is no stay of the judgment pending appeal, the trial court is not divested of jurisdiction to issue a QDRO consistent with the decree because the order merely executes orders previously specified in the divorce decree.
State ex rel. Sullivan v. Ramsey, 124 Ohio St.3d 355, 359, 922 N.E.2d 214, 219 (2010).
The State ex rel. Sullivan court found that because the amended QDRO issued by the trial judge was different in a number of respects from the original QDRO, the trial judge lacked jurisdiction to modify it while it was being appealed, citing Albertson v. Ryder, 85 Ohio App.3d 765, 621 N.E.2d 480 (1993). Because the issuance of the amended QDRO was inconsistent with the court of appeals' jurisdiction to review the January 9, 2009, order and QDRO, the Ohio Supreme Court affirmed the grant by the court of appeals of the writ of prohibition against the trial judge.
Importantly, for the matter before us, the Ohio Supreme Court characterized the function of a QDRO as an "aid of execution on the property division ordered in the divorce or dissolution decree," State ex rel. Sullivan, 124 Ohio St.3d at 359, 922 N.E.2d at 219 (emphasis omitted), a holding that is consistent with our decisions. See Fry v. Fry, 18 Neb.App. 75, 775 N.W.2d 438 (2009) (QDRO is, generally speaking, simply enforcement device of decree of dissolution). See, also, Klimek v. Klimek, 18 Neb.App. 82, 775 N.W.2d 444 (2009).
It has long been the law that "[t]he right to have an execution issued is a valuable right, for this is the only means provided by law to enforce the judgment. This right can only be taken away by some act done in compliance with law. It can never be taken away by anything less." Halmes v. Dovey, 64 Neb. 122, 124-25, 89 N.W. 631, 632 (1902). The "taking away" of the right of execution is done by a supersedeas bond. The basic function of a supersedeas bond is for an appellant to stay execution on a judgment during appeal, and it suspends further proceedings on the judgment during the pendency of the appeal. See In re Estate of Sehi, 17 Neb.App. 697, 772 N.W.2d 103 (2009). See, also, Tilt-Up Concrete v. Star City/Federal, 261 Neb. 64, 621 N.W.2d 502 (2001).
Importantly, in the matter before us, Susan and Gary's divorce decree was not superseded. Thus, as a general proposition, either Susan or Gary could pursue execution on the decree, given the lack of a supersedeas bond's being set and posted. Moreover, we note that there was no order entered pursuant to Neb.Rev. Stat. § 42-351(2) (Reissue 2008) in aid of appeal that would prevent execution generally, or the entry of a QDRO in particular, during the appeal. Thus, we conclude that the district court did in fact have jurisdiction to issue the QDRO of November 20, 2009. However, that being said, once our mandate is issued, the district court can do only what we have told it to do in our opinion and mandate. See Smith-Helstrom v. Yonker, 253 Neb. 189, 569 N.W.2d 243 (1997) (court to which mandate is directed has no power to do anything but to obey mandate; order of appellate court is conclusive on parties, and no judgment or order different from, or in addition to, that directed by appellate court can be entered by trial court). See, also, Xerox Corp. v. Karnes, 221 Neb. 691, 380 N.W.2d 277 (1986).
While the district court did have jurisdiction to issue the QDRO during the pendency of the appeal, the district court must now do what we have directeddivide Susan's *163 401K account, 67 percent to Susan and 33 percent to Garyas detailed in our opinion of May 11, 2010. Accordingly, as a necessary adjunct of obeying our mandate, the district court must necessarily vacate its previous QDRO in order to enter a QDRO that complies with our mandate. Therefore, we hereby overrule the motion that this court vacate the QDRO entered by the district court on November 20, 2009, during the pendency of the appeal.
MOTION TO VACATE OVERRULED.