Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/01/2021 09:09 AM CDT

JOSHUA A. VERZAL, APPELLANT, V.
MICHELLE A. VERZAL, APPELLEE.

___ N.W.2d ___

Filed May 25, 2021.    No. A-20-451.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.

2. **Evidence: Appeal and Error.** When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Divorce: Property Division: Equity.** Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances.

4. **Divorce: Pensions.** A qualified domestic relations order implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution.

5. **Divorce: Property Division.** In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.

6. **Property Division.** Equitable property division is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties.

7. ____. The ultimate test in determining the appropriateness of a property division is fairness and reasonableness as determined by the facts of each case.

Appeal from the District Court for Sarpy County: George A. Thompson, Judge. Affirmed in part as modified, and in part reversed and remanded with directions.

John S. Kinney and Jill M. Mason, of Kinney Mason, P.C., L.L.O., for appellant.

Bradley E. Nick, of Sidner Law, for appellee.

Moore, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Joshua A. Verzal appeals the decree of the district court for Sarpy County that dissolved his marriage to Michelle A. Verzal. He challenges the manner in which the court divided certain marital assets and ordered him to pay an equalization payment. For the reasons that follow, we reverse the court's order related to the equalization payment and remand the cause with directions. We otherwise affirm the order as modified as explained below.

## BACKGROUND

Joshua and Michelle were married in 2006, and three children were born during the marriage. In June 2018, Joshua filed a complaint to dissolve the marriage. The parties agreed on numerous issues prior to trial, including custody of their children, parenting time, and valuation and division of certain assets. Thus, the issues remaining at the time of trial were calculation of child support, alimony, valuation and division of the marital residence, and division of certain accounts.

After trial, the district court entered a decree dissolving the parties' marriage. The court approved their agreement that they share joint legal and physical custody of their children and ordered Joshua to pay $439 per month in child support. The court also approved the parties' undisputed valuation and

distribution of their household goods and vehicles. Michelle's request for alimony was denied.

The district court valued the marital residence at $300,000 and awarded it to Michelle, subject to its mortgage of $197,673. Michelle was also awarded her employment retirement account valued at $93,154 and an investment account valued at $11,057. To Joshua, the court awarded his employment 401K retirement account with a value of $208,828, his employment 457 retirement account with a value of $12,277, his employment pension with a value of $103,408, and personal debt totaling $3,336. To equalize the distribution of the marital estate, the district court ordered Joshua to pay to Michelle, within 6 months of the entry of the decree, an equalization payment of $57,319.50.

After entry of the decree, Joshua filed a motion to clarify or amend the decree, which the district court denied. Joshua appeals.

## ASSIGNMENTS OF ERROR

Joshua assigns, renumbered, that the district court erred in (1) ordering him to pay a lump-sum cash equalization payment of $57,319.50, (2) failing to divide retirement accounts equally and separately from real estate and other assets, and (3) failing to require Michelle to refinance the marital home.

## STANDARD OF REVIEW

[1,2] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

*Equalization Payment.*

Joshua asserts that the district court erred in ordering him to pay the equalization payment in a lump sum of cash rather than through a qualified domestic relations order (QDRO). He argues that he does not have sufficient cash to pay the amount required and that the marital estate did not contain liquid assets, other than the equity that Michelle received in the marital residence. He also claims that such an order has negative tax consequences on him and the portion of the marital estate that he received.

[3,4] Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012). A QDRO, generally speaking, is simply an enforcement device of the decree of dissolution. *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008). A QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution. *Thompson v. Thompson*, 18 Neb. App. 478, 785 N.W.2d 159 (2010). Stated another way, a QDRO provides for an alternate payee "to receive all or part of any benefits due a participant under a pension, profit-sharing, or other retirement benefit plan." See Black's Law Dictionary 1497 (11th ed. 2019).

In the present case, the district court did not divide the retirement accounts between the parties. Rather, it awarded certain accounts to each party, awarded the marital residence to Michelle, and ordered Joshua to pay an equalization payment in cash. There were no other significant liquid assets in the marital estate. Joshua explained at trial that since his separation from Michelle, he has incurred consumer debt totaling approximately $12,000 because he does not "have the month-to-month money to pay for the expenses that are coming up." He also confirmed that he does not have any money in savings.

For child support purposes, the court utilized a monthly net income for Joshua of $7,806.99. He estimated that his monthly expenses are $8,885; this amount, however, included an estimated $800 in alimony that the district court declined to include in the final decree. Thus, Joshua's expenses outweigh his net income by approximately $278 per month. The district court ordered him to make an equalization payment of $57,319.50 to Michelle within 6 months of the entry of the decree. It is evident that although Joshua earns a considerable salary, he has little other liquid assets. If he were to make monthly cash payments to Michelle, he would be required to pay more than $9,500 per month in order to satisfy the full amount within 6 months. The evidence establishes that he is not able to pay this amount.

We therefore conclude, on this record, that the district court abused its discretion in ordering that an equalization payment of $57,319.50 be paid in cash within 6 months. We conclude that under the circumstances of this case, awarding Michelle this sum from Joshua's 401K account using a QDRO was a more appropriate manner to equalize the division of the marital estate. We note that at trial, Michelle did not object to this manner of equalization payment. In her written closing argument to the district court, she also proposed that the equalization payment occur through the transfer of proceeds from Joshua's 401K account. She asserted that "any other equalization method would not only be unfair but impossible based upon the evidence presented at trial." Her proposed decree likewise implemented the use of a QDRO for purposes of receiving the equalization payment.

Considering the absence of liquid assets in Joshua's portion of the marital estate, as well as his complete financial picture, we agree. Thus, we reverse the district court's order that Joshua pay Michelle an equalization payment of $57,319.50 within 6 months of entry of the decree and remand the cause to the district court with directions to order that this payment

be made from Joshua's employment 401K account pursuant to a QDRO. Based on this conclusion, we need not consider Joshua's arguments regarding the tax consequences of the district court's decision in this regard.

*Division of Property.*

Related to his argument above, Joshua also argues that the district court abused its discretion in failing to divide the parties' retirement accounts equally and separately from real estate and other assets. He again cites to the tax consequences of the district court's decision and asserts that the court could have and should have separated the marital assets into "proper categories for division." Brief for appellant at 13. We find no abuse of discretion in the division of assets.

[5-7] In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Equitable property division is a three-step process. *Id*. The first step is to classify the parties' property as marital or nonmarital. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. The third step is to calculate and divide the net marital estate between the parties. *Id*. The ultimate test in determining the appropriateness of a property division is fairness and reasonableness as determined by the facts of each case. *Id*. Joshua's argument relates to the third step in the process.

Although the district court could have adopted Joshua's proposed property division wherein he would receive half of the equity in the marital home and the parties would equally split the retirement accounts, it was not required to do so. Further, the district court was not required to consider the tax consequences of its division when there was no expert testimony regarding the potential tax consequences. The Nebraska Supreme Court has previously found that the value of certain retirement accounts to be awarded to the wife in a dissolution of marriage proceeding could not be reduced by 25 percent

because of future taxes on those accounts without expert testimony of the tax consequences associated with the accounts. See *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). There was no such evidence presented to the district court in this case, and thus, any consideration of potential tax consequences would be speculative. As a result, the district court's division of the marital estate was not an abuse of discretion.

*Refinancing Marital Residence.*

After the parties separated, Michelle remained in the marital residence and Joshua moved out. In the decree of dissolution, the district court awarded Michelle the marital residence and the accompanying mortgage. The court valued the home at $300,000 and found the existing mortgage to total $197,673. Although the decree provides that Michelle "shall pay the first mortgage associated with the real estate, and she shall indemnify and hold [Joshua] free and harmless therefrom," it does not require that Michelle refinance the mortgage into her name only. On appeal, Joshua asserts that the district court erred in failing to require Michelle to refinance the mortgage because it continues to remain an obligation on his credit report and "completely hamstrings Joshua's ability to move forward financially from the divorce. His credit is completely dependent on Michelle maintaining and timely paying the mortgage payment." Brief for appellant at 12. He further contends that "[i]t will be impossible for him to purchase his own home." *Id*.

We disagree with Joshua's assertion that if his name is not removed from the mortgage, it will be impossible for him to purchase his own home, because at the time of trial, he had already purchased a new home. However, we do agree that the district court abused its discretion in failing to require Michelle to refinance the marital home in order to remove Joshua's name from the mortgage. The evidence indicates that the maturity date of the mortgage is 2041, and thus, if Michelle does not refinance the mortgage in order to remove Joshua's

name from that debt, his credit could be tied to the marital residence and the debt thereon for years into the future. We therefore modify the decree of dissolution to require Michelle to refinance the mortgage associated with the marital residence and remove Joshua's name from any debt obligation thereon by October 1, 2021. To avoid any financial hardship, the parties are ordered to share equally the cost incurred.

## CONCLUSION

We conclude that ordering Joshua to pay the equalization payment in cash was an abuse of discretion. Therefore, we reverse the court's order and remand the cause with directions as explained above. We otherwise affirm the order as modified to require Michelle to refinance the mortgage on the marital residence by October 1, 2021, the costs of which are to be shared equally between the parties.

Affirmed in part as modified, and in part
reversed and remanded with directions.