IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

SANTILLANO V. SANTILLANO-ESCOBAR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

EMMA SANTILLANO, APPELLEE,

V.

OSCAR SANTILLANO-ESCOBAR, APPELLANT.

Filed November 9, 2021.   No. A-21-161.

Appeal from the District Court for Madison County: MARK A. JOHNSON, Judge. Affirmed as modified.

Andrea Finegan McChesney, of M | F Law Omaha, for appellant.

Melissa A. Wentling for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

Oscar Santillano-Escobar appeals from a decree of dissolution entered by the district court for Madison County, which dissolved his marriage to Emma Santillano, divided the marital assets and debts, awarded custody of the parties' two minor children, and calculated child support. On appeal, Oscar asserts that the district court erred in awarding Emma the marital home and Oscar the rental home, failing to require Emma to refinance the marital home in her name only, awarding Emma sole physical custody of their minor children and giving her final decision making authority, and calculating child support based on sole custody to Emma. Upon our de novo review of the record, we find that the district court erred in failing to require Emma to refinance the marital home in her name only. We affirm the district court's order in all other respects.

- 1 -

BACKGROUND

Oscar and Emma were married on January 16, 2009, and two daughters were born of the union, one in 2010 and one in 2017. Emma filed a complaint for dissolution of the marriage in July 2019. The district court entered a temporary order in July, awarding temporary physical custody of the minor children to Emma, subject to parenting time in Oscar. The order temporarily granted Emma the use of the marital home, and Oscar the use of the rental home owned by the parties.

Trial was held in November 2020 and the following evidence was adduced. Two parcels of real estate were purchased during the marriage, the marital residence and a rental property. Each party requested that they be awarded the marital residence and the opposing party be awarded the rental home. Oscar is the only party listed on the mortgage for the marital residence. Emma has been paying the mortgage payment on the marital residence since Oscar left the home. She testified that she plans on refinancing the mortgage in her name and has a co-signer available, but Emma had not taken steps toward actually refinancing the mortgage. The rental property is mortgaged in both Oscar and Emma's names.

Emma requested that primary legal and physical custody of the children be awarded to her. She testified that she is not able to coparent with Oscar. Her relationship with her children is very close, and she described them as "momma's girls". Prior to the separation, Oscar worked outside the home, including overtime, and as a result, according to Emma, he was not present at home as much as she was. She stated that she was the primary caretaker, caring for the children when they were sick, and taking them to the doctor and school. As a result of Emma's caretaker role, she described the children as being "super attached" to her. Emma explained that following the extended summer visitation with Oscar following their separation, the older daughter needed counseling for depression and that counseling has been helping. She also stated that the children have a very good relationship with their half sibling, Emma's son from another union.

Oscar requested joint legal and physical custody with alternating weeks of parenting time. Oscar testified that prior to the separation, he and Emma worked together to help with the children; he assisted with the children after school, helping them with homework, making meals, and helping with baths. As of March 2020, Oscar took a different position with his employer that altered his work hours to 8 a.m. to 4:30 p.m. and reduced his opportunities for overtime, in order to have more time with his daughters including taking them to school. He testified that his relationship with his older daughter was "very good," "normal," and that his daughter was close to both him and Emma. After discovering that his older daughter was in therapy, he contacted both of her therapists, neither of whom gave him concern about her emotional well-being.

Oscar testified that the week on/week off summer visits went "good" and there were not any issues during the weeklong visits. He did ask Emma to stop texting the children as much during his parenting time because, according to him, she was texting them from the time they woke up until they went to bed. He explained that during the pendency of the case, he has asked for additional time with the children, but Emma repeatedly denied additional parenting time beyond what was court ordered. Both parties agreed that the primary mode of communication between them was via text. Oscar stated that he believed he and Emma could coparent the children, and that he could put aside their personal differences in order to do so.

The marriage was dissolved by decree on February 3, 2021. The district court found that both parents were fit and proper parents to be awarded the care, custody, and control of the minor children. Emma was awarded sole physical custody of the minor children, subject to alternating weekend parenting time with Oscar from Thursday evening to Monday morning. In determining the best interests of the children, the district court relied on the parties' difficulty in communicating and that Emma was the children's primary care provider prior to the separation. Based upon the sole custody worksheet, the district court ordered Oscar to pay child support of $446 when there are two minor children, and $273 when there is one minor child.

The district court awarded Oscar and Emma joint legal custody of the children. In the event the parties are unable to resolve their differences as to any decision involving the children, Emma was awarded the final decision-making authority to resolve the disagreement.

Emma was awarded the marital residence, subject to an existing mortgage of approximately $73,000. Oscar was awarded the rental home, subject to an existing mortgage of $7,000. Both parties were directed to hold harmless the other party regarding the financial obligations on the properties. Oscar appeals.

## ASSIGNMENTS OF ERROR

Restated, Oscar assigns that the district court erred by (1) awarding sole physical custody of the parties' minor children to Emma, (2) awarding Emma with final decisionmaking authority despite awarding joint legal custody to both parties, (3) awarding Emma the marital home and Oscar the rental home, (4) failing to require Emma to refinance the marital home in her name only, and (5) determining the child support amounts without considering actual parenting times.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or its action is clearly against justice or conscience, reason, and evidence. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005).

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015); *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018).

## ANALYSIS

*Sole Physical Custody.*

Oscar assigns that the district court abused its discretion by awarding sole physical custody of the minor children to Emma, given that both parties were found to be fit and the best interests of the children would be served by having equal parenting time with both parents. We disagree.

Oscar argues the district court should have granted joint physical custody of the minor children because both parents are fit, have good quality relationships with the minor children, and no safety concerns existed related to the children. Physical custody is the authority and responsibility regarding the child's place of residence and the exertion of continuous parenting time for significant periods of time. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Joint physical custody means mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time. *Id.*

All determinations of custody and parenting time are based on factors affecting the best interests of the child. *Id.* In determining the best interests of the child, the statutory factors that the court considers include: the relationship of the minor child to each parent; the desires and wishes of the minor child, if of an age of comprehension, but regardless of chronological age, when such desires and wishes are based on sound reasoning; the general health, welfare, and social behavior of the minor child, and credible evidence of abuse. Neb. Rev. Stat. § 43-2923 (Reissue 2016).

In addition to these statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear, supra*. No single factor in the best interests analysis is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020).

In the present case, the district court determined that it was in the best interests of the children for Emma to receive sole physical custody of both minor children, subject to parenting time in Oscar. The court determined that Emma had been the children's primary care provider prior to separation, and therefore, granting her sole physical custody provided an overall stable environment for the children. Additionally, the district court found the testimony of Emma's son from a previous union supportive of Emma's physical custody award. Specifically, that he was a very respectful, polite, articulate young man who has been raised very well by Emma and supported the district court's belief that the minor children would also be raised well by Emma.

We find no abuse of discretion in the district court's determination. Both parties testified that their primary means of communication was via text and the exhibits received at trial support this testimony. Additionally, Emma testified that she had been the children's primary caregiver and she could not co-parent with Oscar. We acknowledge that Oscar's testimony was to the contrary, but as an appellate court, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015); *Kashyap v. Kashyap*, 26 Neb. App. 511, 921 N.W.2d 835 (2018). The district court did not abuse its discretion in finding that Emma was the primary caregiver to the minor children prior to the separation, and as a result, she would be able to provide

an overall stable environment for the minor children. It is evident from the record that the parties are not able to communicate effectively.

Oscar states that the district court failed to find that he provided an unstable environment, and also, neglected to take into consideration Oscar's request to be awarded the marital home. The district court is not required to find one environment unstable or whether a party requested certain property, and is required, instead, to consider what is in the best interests of the minor children. Given Emma was the primary caregiver prior to the separation and Emma's son provided a strong example of her abilities to raise a child on her own, we find no abuse of discretion in the district court awarding her sole physical custody, subject to parenting time in Oscar.

*Final Decisionmaking Authority.*

Oscar assigns the district court abused its discretion in awarding Emma final decisionmaking authority to resolve any disagreements as to any decisionmaking involving the minor children despite the court's awarding joint legal custody to the parties. We disagree.

Oscar argues that awarding Emma final decisionmaking authority when joint legal custody was awarded to the parties creates a legal fallacy. Oscar does not dispute the award of joint legal custody of the parties' minor children, only that the award of final decision-making authority causes a legal fallacy. Legal custody focuses entirely on decisionmaking authority and is defined as the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). The best interests of the child are the primary consideration for developing custodial plans. *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019).

In considering such best interests, it is a common occurrence and a court is permitted to supply a party with final decisionmaking authority in some areas to avoid future impasses which could negatively affect the child while maintaining both parents' rights to consultation and participation in important decisions. *Id*. See also *Boyer v. Boyer*, 24 Neb. App. 434, 889 N.W.2d 832 (2017). The district court found that the parties have a very difficult time communicating with each other and the lack of communication significantly interferes with productive decisions regarding the children's health, education, and welfare; regardless they were granted joint legal custody. By definition, joint legal custody is the "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2020). Therefore, the parties must still consult one another on fundamental decisions concerning the minor children's welfare before Emma can invoke her final decisionmaking authority. We find no abuse of discretion in the manner in which the district court fashioned its award of legal custody to avoid future impasses.

*Property Distribution.*

Oscar assigns that the district court erred in awarding the parties' marital home to Emma and the rental home to him. We find no abuse of discretion in the division of the real estate.

In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Equitable property division is a three-step process. *Id.* The first step is to classify the parties' property as

marital or nonmarital. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties. *Id.* As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and as determined by the facts of each case. *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). Oscar's argument relates to the third step in the equitable property division process. Both parties requested that the marital home be awarded to them. Oscar argues that the home was financed solely in his name, but offers no other argument to support his assertion that the award of the marital home to Emma was an abuse of discretion. Although the district court could have adopted Oscar's proposed property division wherein he would receive the marital home and Emma would receive the rental home, it was not required to do so. The district court awarded the marital home to Emma, subject to an existing mortgage of $73,000, and the rental home to Oscar, subject to an existing mortgage of $7,000. Oscar does not argue that he received too small of a portion of the marital estate, instead arguing he should have received a different part of the estate. This distribution of marital property is not an abuse of discretion, and we affirm the district court's decision regarding the equitable division of the marital property.

Additionally, Oscar argues that he was limited in his ability to testify regarding his reasons for requesting the marital residence due to time limitations imposed by the court and his use of an interpreter. However, Oscar did not assign error to any procedural limitations imposed by the court; therefore, we do not address this argument. See *Korth v. Korth*, 309 Neb. 115, 958 N.W.2d 683 (2021) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

*Refinancing Marital Home Mortgage.*

Oscar assigns that if the distribution of real estate is upheld, the district court erred in failing to require Emma to refinance the marital home into her name solely. We agree, and modify the decree of dissolution to require Emma to refinance the mortgage in her name only.

Oscar argues that the mortgage will remain an obligation on his credit report, and it completely restricts his ability to become financially independent from the marriage. Emma argues that it was not an abuse of discretion to not require her to refinance in her name, and that she intended to refinance the mortgage in her name alone and had a cosigner lined up if needed. The decree provides that Emma is awarded the marital home, subject to any and all indebtedness owed thereon, including the existing mortgage, and Emma shall hold Oscar harmless thereon. We recently confronted a similar situation in which a party was awarded a marital residence subject to a mortgage but not required to refinance in her name only. See *Verzal v. Verzal*, 29 Neb. App. 904, 962 N.W.2d 563 (2021). In *Verzal*, we found that it was an abuse of discretion not to require the wife to refinance in her name only because the husband's credit could be tied to the marital residence and the debt thereon for years into the future. *Id.*

Similarly in the case at hand, while no evidence was presented on the length of the mortgage, the mortgage was approximately $73,000 and the payment was approximately $685 per month. If not removed from the mortgage, Oscar's credit would be tied to the marital residence and the debt thereon for years into the future. Emma testified that she intended to refinance the mortgage and had had conversations with a bank to do so. She further stated that she had a cosignor available if she needed one. Therefore, we find no financial hardship that would prevent Emma

from refinancing in her name only. We therefore modify the decree of dissolution to require Emma to refinance the mortgage associated with the marital residence and remove Oscar's name from any debt obligation thereon by February 1, 2021.

*Calculation of Child Support Payments.*

Oscar assigns that the district court erred in determining child support amounts by failing to consider the actual parenting times and the rebuttable presumption referenced in Neb. Ct. R. § 4-212 (rev. 2011) and found in *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). We disagree.

In addition to reiterating his joint physical custody argument, Oscar argues that worksheet 3 for joint physical custody should have been used to calculate his payment because Oscar's parenting time allows for more than 138 days of parenting time. Oscar relies heavily on § 4-212 and *Patton v. Patton, supra*. Section 4-212 provides that when a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year, it is a rebuttable presumption that support shall be calculated using worksheet 3. When a specific provision for joint physical custody is ordered and one party's parenting time is 109 to 142 days per year, the use of worksheet 3 to calculate support is at the discretion of the court. § 4-212.

In *Patton*, the father's parenting time was approximately 160 days a year and the district court used worksheet 3 to calculate child support, despite an award of sole physical custody to the mother. On appeal, we stated that "[t]he ultimate question becomes, then, whether the lack of a specific provision for joint physical custody prevents use of the joint custody worksheet when the threshold amount of parenting time is met for application of the rebuttable presumption." *Id*. at 63, 818 N.W.2d at 635. We concluded that it did not and affirmed the district court's use of the joint custody calculation.

Here, the court awarded sole physical custody to Emma and Oscar's regular parenting time equates to 138 days, which is below the threshold for the application of the rebuttable presumption contained in § 4-212. Therefore, use of worksheet 3 was discretionary with the district court and we reject Oscar's argument that the court should have applied the rebuttable presumption set forth in § 4-212.

## CONCLUSION

For the aforementioned reasons, we modify the divorce decree to require Emma to refinance the marital home in her name, but affirm the district court's order in all other respects.

AFFIRMED AS MODIFIED.